[No. 18575.   Department Two.   October 6, 1924.]

LILLIAN E. SPRINGSTUN, *Respondent,* v. WILLIAM E. SPRINGSTUN, *Appellant.*[1]

INFANTS—DISABILITIES—AGE OF MAJORITY—STATUTES—VALIDITY. The legislature may, before a minor arrives at the age of majority, change the law and extend the status of minority for a period of three years.

DIVORCE (88)—SUPPORT OF CHILD—ENFORCEMENT OF DECREE—DEFENSES—SATISFACTION OF JUDGMENT. A decree of divorce awarding monthly payments for the support of a minor daughter "during minority" has reference to the age of minority as fixed by the statute in force at the time the decree was entered; and the same being a judgment affecting private rights, it is not affected by a subsequent act of the legislature changing the age of majority.

Appeal from an order of the superior court for King county, Griffiths, J., entered January 24, 1924, adjudging the defendant liable for payments of alimony for the support of a minor.   Reversed.

[1]Reported in 229 Pac. 14.

*Cosgrove & Terhune,* for appellant.

*Bronson, Robinson & Jones* and *W. L. Grill,* for respondent.

FULLERTON, J.—The appellant, William E. Springstun, and the respondent, Lillian E. Springstun, were formerly husband and wife. There was born to them as the issue of their marriage one daughter, Wildora E. Springstun. On November 20, 1920, the superior court of King county, at the suit of Lillian E. Springstun, entered a decree dissolving the bonds of matrimony then existing between herself and her husband. Wildora E. Springstun was then a minor, and the decree, with reference to her care, custody and control, contained the following provision:

"That Lillian E. Springstun do have the care, custody and control of Wildora E. Springstun during her minority, and that the said William E. Springstun do pay to the plaintiff as alimony for the support of said Wildora E. Springstun, during her minority, the sum of Fifty Dollars ($50.00) per month, payable on the first day or before the 10th day of each and every month during the minority of said Wildora E. Springstun."

At the time of the entry of the decree, the statute relating to the age of majority (Rem. Comp. Stat., § 10548) [P. C. § 580], read as follows:

"Males shall be deemed and taken to be of full age for all purposes at the age of twenty-one years and upwards; females shall be deemed and taken to be of full age at the age of eighteen years and upwards."

At its biennial session of 1923 (Laws of 1923, p. 222), the legislature amended the statute, making it read:

"All persons shall be deemed and taken to be of full age for all purposes at the age of twenty-one years and upwards."

The amendatory statute went into effect on June 6, 1923. Wildora E. Springstun reached the age of eighteen years on October 3, 1923. The appellant, from the time of the entry of the decree to the time the daughter became of the age of eighteen years, made the monthly payments required by the decree. After that time he refused to make further payments, when the present proceedings were instituted against him to compel him so to do. The hearing resulted in an order adjudging the appellant liable for the monthly payments provided for in the decree until the daughter reaches the age of twenty-one years, and in appropriate provisions for enforcing the payments.

It will be seen from the dates given that, at the time the decree was entered, the statute fixed the age of majority, in so far as it applied to women, at the age of eighteen years, and that the amendatory statute was enacted and became effective before the daughter reached the age of majority as it was then fixed by the legislature.

That the statute had the effect of extending the minority of the minor daughter until she reached the age of twenty-one years, we think there can be but little doubt. Majority or minority is a status, rather than a fixed or vested right. While, under the common law, both men and women were held to become *sui juris* on reaching the age of twenty-one years, the rule was arbitrary in the sense that it was one of convenience and necessity as distinguished from a substantive rule of law. It is, therefore, a matter wholly subject to the legislative will. That body may fix a different date as the time when the status shall change, unless, of course, its power so to do is taken away by some provision of the fundamental law controlling its power to enact such laws. To support these propositions it is

sufficient to point to the history of the law. Legisla-
tive bodies have from the earliest times exercised the
power, and the courts have uniformly supported the
legislation. It may be that it has been done without
special inquiry as to the source of the power, but this
in itself is the best evidence of its existence.

It is true, also, that laws affecting the status of in-
dividuals sometimes materially affect their personal
privileges. It was so in this instance. The amenda-
tory statute subjected the daughter to parental con-
trol for three years longer than she would otherwise
have been subjected. By it her right to manage, con-
trol and convey her property, her right to her per-
sonal earnings, her right of personal freedom, and
many other rights which could be enumerated as be-
longing to persons of full age, were postponed for a
like period. But this, as we say, does not argue against
the validity of the law. The condition being a status,
it was one which the legislature had the right to im-
pose.

But we are not persuaded that the foregoing con-
siderations are controlling of the appellant's rights in
the instant case. While it is the legal duty of every
parent to support his minor children, the duty is af-
fected by many considerations. His health, his means,
his station in life, as well as similar considerations on
the part of the child, have a bearing upon it. But
this general duty to support is not the duty that is
sought to be enforced in the proceeding before us.
There is a decree of court, entered, it is true, for the
purpose of requiring the appellant to support his
minor child, but the question now is, has this decree
been satisfied. If it has been satisfied, it no longer im-
poses any duty on the appellant. It may be that he
still owes the duty of support, but if this be so, it must

be enforced in special proceedings instituted for that purpose, proceedings in which the appellant will have the right to appear and be heard as to the amount of such support. It cannot be done by the revival of an expired decree.

It is our opinion that the appellant has fully performed the decree. The language of the decree is that the appellant shall make the monthly payments "during the minority" of the daughter. The statute then in existence limited minority to the time the minor reached the age of eighteen years. Seemingly, therefore, the decree is as definite and certain in that respect as it would have been had the decree expressly named the eighteenth year of the minor as the date of its expiration. It is manifest that it could bear no other meaning at the time of its entry, and equally so that it could bear no other meaning prior to the time the legislature amended the statute. Being a judgment for the payment of money, it could have been satisfied at any time before the statutory amendment, and its apparent, if not its actual, lien upon the appellant's real property removed by the payment into court of a sum sufficient to satisfy the deferred payments. To say, therefore, that the statutory amendment extended the payments is to say that it increased the appellant's liability under the decree—it is to say that it increased the liability, to use the calculations of the appellant's learned counsel, from $1,750 to $3,550.

We need not argue, we think, that the legislature is without power to set aside, annul, or change the liability upon a judgment affecting solely the rights of private parties by the enactment of a general law. It may possibly, after entry, change the rule of procedure for enforcing judgments, such as the manner of issuing execution, conducting sales, making redemption, and

the like, but it is without power to affect the substantive rights of the parties to a judgment. A judgment is property, and is as much protected by the fundamental law against invasion by the legislative body as is any other species of property.

The order appealed from is reversed, and the cause will be remanded with instructions to dismiss the proceedings.

MITCHELL, PARKER, BRIDGES, and PEMBERTON, JJ., concur.