## PICKERING v PESKIND

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided March 17, 1930

Harry C. Gahn, Cleveland, for plaintiff in error.

Cannon, Spieth, Taggart, Spring & Annat, Cleveland, and Day & Day, Cleveland, for defendant in error.

LEVINE, J.

The first question for our consideration is: Did the trial court err in holding that

plaintiff's cause of action was barred by the statute of limitations?

The chronological order of events is, of course, important. The accident occurred October 21, 1910, and in accordance with the finding of the jury plaintiff was born January 7, 1905, and therefore became 18 years of age on January 7, 1923. At that time §8023, GC, provided as follows: "All male persons of the age of twenty-one years and upward, and all female persons of the age of eighteen years and upward who are under no legal disability, shall be capable of contracting respecting goods, chattels, lands, tenements, and any other matter or thing which may be the legitimate subject of a contract, and, to all intents and purposes be of full age."

Sec 11224, GC, at that time provided:

"An action for either of the following causes, shall be brought within four years after the cause thereof accrued: * * *

"4. For an injury to the rights of the plaintiff not arising on contract nor hereinafter enumerated."

If it were held that the statutory period of limitations commenced to run when plaintiff became 18 years of age, it would follow that the action was barred on January 7, 1927, and that, the same not having been commenced until January 6, 1928, it was consequently barred as having been brought too late.

Plaintiff relies on the amendment to §8023, GC, which became effective July 18, 1923, increasing the age of majority of females from 18 to 21 years. The amended section is as follows: "All persons of the age of twenty-one years and upward, who are under no legal disability, shall be capable of contracting respecting goods, chattels, lands, tenements, and any other matter or thing which may be the legitimate subject of a contract, and, to all intents and purposes be of full age."

It is urged in behalf of plaintiff that, notwithstanding the finding of the jury, the plaintiff became 18 years of age January 7, 1923, and prior to the enactment of the amendment, by virtue of said amendment the plaintiff's status as a person of full age was taken away, and she became an infant again within the contemplation of law, and consequently the operation of the statute of limitations was suspended and would not begin to run until she became 21 years of age.

It is argued in behalf of plaintiff that infancy is not a vested right, that it is not

a distinct status involving settled vested interests, and that the Legislature has the power to change the age at which the minor has the power to exercise legal rights which shall be binding upon him. Young v Sterling Leather Works, 91 N. J. Law, 289, 102 A., 395.

A long line of authorities is cited in plaintiff's brief to the effect that any right bestowed by legislation can be taken away except such as affect vested interests in real or personal property.

The defendant contends that, since the plaintiff became of full age prior to the enactment of the amendment, thereby acquiring the rights of property pertaining to a person of full age and majority, these could not be taken away from her by subsequent legislation, because of the following provisions of both the United States Constitution and the Ohio Constitution.

Article I, §10, of the Constitution of the United States, provides that: "No State shall * * * pass any * * * law impairing the obligation of contracts."

The Fourteenth Amendment to the Constitution of the United States provides: "Nor shall any State deprive any person of life, liberty, or property, without due process of law."

**Article II, §28, of the Constitution of Ohio, provides:** "The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts."

It is urged that, if plaintiff's contention as to the meaning of the amendment be correct, it could only be based upon the theory that the amendment was retroactive in its effect, and that a construction such as this would make the amendment unconstitutional, citing the language of Justice Story, which was quoted with approval in **Rairden v Holden, 15 Oh St, 207,** 210: "Upon principle, every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective."

In behalf of defendant, it is also pointed out that the amendment to §8023 GC is silent as to persons who had prior to its adoption become of full age, and it is also silent as to past transactions and considerations. The defendant cites this court to

§26, GC, which is as follows: "Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy it shall not affect pending actions, prosecutions, or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution, or proceedings, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

It is argued that this section is decisive of the question before us in favor of the defendant, because it specifically provides that an amendment shall not affect causes of action "existing at the time of such amendment."

We are of the opinion that the contention of the defendant is correct. It must be conceded that the Legislature has the right to change the age of majority, and that the Ohio Legislature was within the exercise of its power in passing the amendment effective July 18, 1923, increasing the age of majority of females from 18 to 21 years. In interpreting the amendment, we hold that the same is not retroactive and is not intended to affect the existing property rights of females who have become 18 years of age prior to the amendment of §8023 GC, effective July 18, 1923.

The plaintiff's cause of action, even though sounding in tort, must be regarded as a right of property. On January 7, 1923, when plaintiff, according to the finding of the jury, became 18 years of age, she had a right of action for tort against the defendant. This right is a right of property which could not be taken away from her by the amendment effective July 18, 1923.

A right of action for tort is a right of property protected by the Constitution. Wade on Retroactive Laws, §172.

The various authorities cited by counsel for plaintiff in his brief are to the effect that any right bestowed by the Legislature can be taken away except such as affect vested interests in real or personal property.

Holding as we do that the plaintiff's cause of action against defendant was a right of property, it clearly comes within the authorities cited by plaintiff's counsel.

The assertion that a right of action for tort is a right of property is not new in Ohio. In **City of Cincinnati v Hafer, 49 Oh St, 60, 30 NE, 197,** the Supreme Court of Ohio, held to that effect. On page 65 (30 NE, 198), the court said: "While by a chose in action is ordinarily understood a right of action for money arising under contract, the term is undoubtedly of much broader significance, and includes the right to recover pecuniary damages for a wrong inflicted either upon the person or property. * * * A thing in action, too, is to be regarded as a property right. One of the well recognized divisions of personal property is into property in possession, and property or choses in action. 'A leading distinction, in respect to goods and chattels, is the distribution of them into things in possession and things in action. The latter are personal rights not reduced to possession, but recoverable by suit at law. * * * Damages due for torts are included under this general head or title of things in action'."

The Supreme Court of Missouri passed upon a question similar to the one involved in the case at bar, in Nahorski v St. Louis Electric Terminal Ry. Co., (decided in July, 1925), 310 Mo., 227, 274 SW, 1025. We quote from the syllabus: "The Act of 1921, Laws 1921, p. 399, declaring that 'all persons of the age of twenty-one years shall be considered of full age for all purposes * * * and until that age is attained they shall be considered minors,' has no retrospective operation, and did not make a minor of a woman who had attained to the age of eighteen years before its enactment. Although she was not twenty-one years of age at the time it became effective and at the time her cause of action accrued, she was not a minor and was not entitled to have a next friend to represent her in the suit, if she was eighteen years of age before her cause of action accrued and before the act became effective, because under the then existing law she was of legal age when she attained to eighteen years."

In the opinion the court said, at page 233 (274 SW, 1026): "Statutes fixing 'full age' or legal majority affect the personal status of persons coming within it and the validity of their contracts. They are not merely procedural or remedial laws. To hold that this statute is retrospective in its operation would be to hold it unconstitutional. (§15, Art. 2, Mo. Constitution). If its intent is, as plaintiff contends, to extend the minority of all persons who were over eighteen and under twenty-one years of age at the time of its passage, it impairs the obligation of contracts entered into by such persons while they were of legal age under the prior statute, and the

statute would have to be declared unconstitutional. No such intent appears in the language of the statute, and we hold that it is not retrospective in its operation."

In order to free the amendment, effective July 18, 1923, from constitutional impediments, we hold that the same was not intended to affect vested rights of females who became 18 years of age prior to the amendment becoming effective, and that a chose in action is to be regarded as such vested right; that since according to the finding of the jury the plaintiff became 18 years of age January 7, 1923, her right of action against defendant then accrued and continued to exist, notwithstanding the amendment effective July 18, 1923. It follows, therefore, that this action was brought too late because the statutory period of four years had elapsed prior to the bringing of the action.

It is urged that the finding of the jury as to the date of birth of the plaintiff was manifestly against the weight of the evidence. A detailed statement of the various witnesses to support plaintiff's allegation in the second amended petition that she was born January 7, 1906, is set forth in plaintiff's brief. It would appear at a glance that the numerical weight of the evidence was on plaintiff's side. The power of the Court of Appeals to order a reversal of the judgment on the ground that the same was manifestly against the weight of the evidence cannot be gauged by the number of witnesses who have testified on one side or the other. Reference must be had as to the quality as well as to quantity. If there is any credible evidence in the record which sustains the verdict, a reviewing court cannot set it aside, though the reviewing court itself might have found differently on the facts.

There is no question that in the case at bar there was some confusion in the mind of plaintiff and her mother as to the exact date of birth. The first amended petition filed by plaintiff definitely set forth that she was born January 7, 1905. The change of front as to the date of birth, and fixing it as January 7, 1906, did not take place until the court sustained a demurrer to the first amended petition, and holding that the action was barred by the statute of limitations. We do not intend to cast even the slightest reflection upon the parties or their counsel in this case for this apparently sudden revelation as to plaintiff's date of birth. It is quite probable that the importance of definitely fixing the date of birth did not occur to either.

the parties or their counsel until the ruling of the Common Pleas Court that, in the event the date of birth is fixed as January 7, 1905, the action was barred by the statute of limitations. Subsequent inquiry in all probability led them to the beief that they were mistaken in the assertion found in the first amended petition fixing the date of the birth as of January 7, 1905. However, one can readily see how this radical change from 1905 to 1906, as found in the second amended petition, affected the minds of the jury. The jury had a right to conclude that the plaintiff and her mother were confused, and that therefore their statement could not be relied upon. There was some credible evidence in the record tending to sustain the contention of defendant which fixed plaintiff's date of birth as January 7, 1905.

We cannot say, therefore, that the verdict of the jury is manifestly against the weight of the evidence.

Did the court commit prejudicial error in admitting the records of both Lakeside Hospital and Mt. Sinai Hospital on the question of the age of plaintiff? The plaintiff did not deny that she had given her age at Lakeside Hospital, but did deny that she had given her age at Mt. Sinai Hospital. Testimony was adduced that the age of the patient at Mt. Sinai Hospital was obtained directly from the patient. The medical historian of Mt. Sinai Hospital, who had custody of all its records, testified at length as to how the records were made and kept at the time, and that it was a rule and regulation of Mt. Sinai Hospital to procure the patient's age. The testimony shows that these records are kept in the regular and usual course of the hospital's business. Similar testimony was offered as to how the records of Lakeside Hospital were kept at the time.

In **Leonard, Jr. v State, 100 Oh St, 456,** 127 NE, 464, the Supreme Court held as follows:

"4. 'Shop books' kept by a cold storage warehouse company, containing original entries made by such corporation through its duly authorized officers or agents, in the regular course of its business, are competent as evidence, when identified and verified by the oath of a witness competent to testify.

"5. When such original entries are made at the time of the receipt of the goods in cold storage warehouse, or at the time of the delivery of said goods to a purchaser, such entries are a part of the res gestae of

the transaction to which they relate, and as such are competent where the transactions themselves are in issue.

"6. When such original entries are made in the regular course of business, by a person duly authorized to make them, and where such entries are declarations against the interest of the party so making them, such entries are competent as evidence under the rule of declarations against interest.

"7. The fact that the statute regulating such cold storage warehouses by special provision requires the keeping of records relative to the receipt and redelivery of. goods in cold storage makes such records quasi-public matter, and competent as evidence when qualified by a witness competent to testify."

In the opinion, on page 463 (127 NE, 466), the court said: "Courts of law and equity must know as judges what they know as men. Common, everyday experience must not be ignored to satisfy some merely technical rule, and the several rules of evidence must be so adjusted and adapted to our changing business and commercial life as the nature and the necessities of the case require for the safe and successful conduct of such business."

We hold, therefore, that there was no error in admitting the hospital records.

In this connection it is urged that there was error committed by the court in admitting the memorandum used by the witness, Miss Alice Kelley, to refresh her recollection. Miss Kelley was called as a witness in behalf of the defendant, and testified that, while she was connected with the domestic relations bureau of the Common Pleas Court, she came in contact with the mother of plaintiff, and that in the records made by her at the time there is a statement that the daughter Mildred, who is plaintiff in this action, was born January 7, 1905. Miss Kelley stated that she had no independent recollection of the conversation, but had to depend upon the memorandum made at the time.

It has been repeatedly held that, when the witness, after examining a memorandum, cannot testify to an existing awakened knowledge of the fact independently of the memorandum, but can testify that at or about the time the writing was made he knew its contents, and that he is still satisfied that its recitations are true, both the testimony of the witness and the memorandum are admissible. It is said that the two are the equivalent of a present positive statement of the witness, affirming the truth of the contents of the memorandum, and the memorandum is admitted, not as substantive evidence by itself, but as merely auxiliary to the testimony of the witness. There are many everyday transactions, in commercial establishments particularly, which after a little time could not otherwise be proved.

"It is not to be supposed that officers and clerks in large trading and other business establishments, can call to mind all that has been done in the course of their employment; and when their original entries and memoranda have been duly authenticated, and there is nothing to excite suspicion, there can be no great danger in allowing them to be laid before the jury." Bank of Monroe v Culver, 2 Hill (N.Y.), 531. Accordingly we find no error in the admission of evidence.

Was there prejudicial error committed in rejecting evidence offered by plaintiff? The plaintiff offered a divorce decree in a divorce suit between plaintiff's mother and father, as bearing upon the age of Mildred Pickering. Of course there can be no denial that the divorce decree is a public record, but neither of the parties in the case at bar were parties in that case. Decrees are usually prepared by the lawyers, who gain their information from the parties. We cannot see, by any process of reasoning, how the same could be used as against defendant.

The contention of plaintiff, that her counsel was not permitted to cross-examine the witness from Mt. Sinai Hospital as to how the age of plaintiff was obtained, is not supported by the record. On the contrary, the record seems to disclose a careful and minute inquiry on that subject.

Another complaint in this action is that plaintiff was not permitted to testify that her grandmother, who was deceased, told her that she was born January 7, 1906; that, according to Jones on Evidence, the statement of a member of a family in a position to know, as to the age of another member in the family, is competent where the party making the statement died before the trial, is an exception to the hearsay rule. In support of it there is also cited a statement in 22 Corpus Juris, 171.

This exception to the hearsay rule relates to a declaration about family pedigree. Wigmore on Evidence lays down three prerequisites to the admission of such declaration, as follows:

"1. That the declarant was a close member of the family and is dead;

"2. That the declaration must be made ante litem mortem or before the controversy arose; and

"3. The declaration must relate to matter of family pedigree."

In Jones on Evidence (2d Ed.), vol. 3, page 2103, it is stated: "Yet the declarations of relatives will not necessarily be admissible whenever the birth, marriage or death of a party forms the subject of controversy; but such proof would seem to be confined to cases which directly or indirectly involve some question of relationship, and in which the fact sought to be established by hearsay is required to be proved for some genealogical purpose."

We find no prejudicial error on the part of the court in the rejection of evidence.

Did the court err in its charge that the burden of proof was upon the plaintiff to show that her date of birth was January 7, 1906? We think not. Since 17 years had elapsed from the time the accident occurred, the action would of course be barred by the operation of the statute of limitations unless the plaintiff is able to bring herself within the saving clause of the statute, which suspends the operation of the statute of limitations in the case of minors. (§11229, GC).

Various other criticisms applying to the charge do not appear to us sufficiently substantial to justify a reversal.

Likewise the charge of irregularity on the part of the court because of certain statements which the court made to the jury, which seem to indicate the court's views of the case, is not sufficient as a ground for a reversal.

Holding to these views herein expressed, the judgment of the Common Pleas Court will therefore be affirmed.

VICKERY, PJ, and SULLIVAN, J, concur.