## OHIO NATIONAL BANK, Trustee v BRIGHT II, et

Ohio Appeals, 2nd Dist, Franklin Co

No 3312. Decided June 18, 1941

454

Eagleson & Eagleson, Columbus, for plaintiff-appellee.

Allen I. Pretzman, Columbus, for Louise M. Drennen.

Fred C. Rector, Columbus, for Helen Bright Boone.

Griffith & Griffith, Columbus, for Elsie Bright.

Wilbur E. Benoy, Columbus, and H. Leonard DeKalb, for Tom Pittman and Cleone Hawkins.

## OPINION

By BARNES, J.

This is an appeal on questions of law from a judgment of the Probate Court in favor of defendants-appellees, Martha S. Pittman, Tom Pittman and Cle-one Hawkins upon the construction of the will of George W. Bright, deceased.

That portion of the will of George W. Bright immediately under consideration is Item XI, as follows:

"I give, devise and bequeath to my beloved foster daughter, Helen M. Quinn, who has been so faithful to me and my family, one-third (1/3) of my entire estate whether real, personal and mixed, and wheresoever situated which I may own or have the right to dispose of at the time of my decease, which said bequest I direct my Executors and Trustees to pay to the said Helen M. Quinn the sum of Two Thousand Dollars ($2000.00) annually, to be paid in quarterly payments out of the income and principal from said one-third (1/3) of my entire Estate. If the income from one-third (1/3) of my entire estate does not produce the sum of Two Thousand Dollars ($2000.00) annually, then I direct my Executors and Trustees to pay to the said Helen M. Quinn from the principal of said one-third (1/3) of my estate so bequeathed to the said Helen M. Quinn such an amount as will make her annual payment the sum of Two Thousand Dollars ($2000.00) for and during her natural life. After the death of the said Helen M. Quinn, I direct my Executors and Trustees to pay the unconsumed portion of this one-third (1/3) of my entire estate, if any, to my heirs share and share alike."

George W. Bright died January 28, 1928, leaving surviving, as his closest relative, Mary E. Pittman, a sister of the whole blood who died on September 18, 1939, leaving Tom L. Pittman, Martha Pittman and Mary Pittman Orr, her legal representatives and heirs at law and Mary Pittman Orr died intestate September 28, 1939, leaving Cleone Hawkins, her legal representative and heir at law. Other relatives remaining at the death of testator were heirs or personal representatives of brothers or sisters of the half blood.

The factual situation was presented in the trial court upon statements of fact agreed to by all the parties in all

particulars except one, No. 6, to which Elsie Bright does not agree, and is so presented here. Stipulation No. 6 is that that portion of the estate under consideration in this action came to George W. Bright by purchase.

At the time of the death of the testator, §8574 GC, controlled the descent of real estate which came not by descent, devise or deed of gift and provided in part,

"(3) If there are no such parents, * * *, the estate shall pass to the brothers and sisters of the intestate of the whole blood and their legal representatives.

(4) If there are no brothers or sisters of intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half blood, and their legal representatives."

Sec. 8578 GC, controlled the distribution of personal property and provided,

"When a person died intestate and leaves personal property, it shall be distributed in the order and manner following: * * *

(3) * * * If such intestate leaves no parents surviving him, all of such personal property shall be distributed to the brothers and sisters of the whole blood or their legal representatives, or if there be no brothers or sisters of the whole blood or their legal representatives, then to the brothers and sisters of the half blood or their legal representatives."

It is stipulated that Helen M. Quinn died January 29, 1940, at which time §10503-4 GC (6), defining the course of descent and distribution, provided:

"If there be no spouse, no children or their lineal descendants, and no parents surviving, to the brothers and sisters, whether of the whole or the half blood of the intestate or their lineal descendants per stirpes."

The time of the vesting of the estate remaining at the death of Helen M. Quinn is decisive of the respective rights of those who claim as legal representatives of the sister of the whole blood and the heirs or personal representatives of the brothers or sisters of the half blood. Did the remainder estate vest upon the death of the testator or upon the death of Helen M. Quinn?

The trial court held that the remainder estate vested upon the death of the testator and passed to Mary E. Pittman, a sister of testator of the whole blood, as his heir at law.

We are favored with the decisions of the Probate Judge, the first of which passes generally upon the action to determine heirship, the second, particularly upon the claim of Elsie Bright, appellant, the widow of Walter S. Bright, who died on April 12, 1932, the son of Samuel Bright, a half brother of George W. Bright, deceased.

It is unnecessary to a determination of the question before us to define with particularity the estate which Helen M. Quinn took under Item XI, whether a life estate in one-third of the entire estate of the testator to the extent of $2000.00 income annually, or whether a charge of $2000.00 annually upon one-third of the entire estate of the testator, so long as Helen M. Quinn lived.

The obvious purpose of the testator as to Helen M. Quinn was to assure her an annuity for life of $2000.00 per year to be produced by income, if sufficient, otherwise from the corpus of a full one-third of the estate. It was possible under the terms of the Item that all of the one-third of the estate would be consumed and if that occurred, Helen M. Quinn had the equivalent of a fee in one-third of the estate.

Appellants in support of their contention that the remainder estate provided in Item XI is contingent in character, cite, among others, the following cases:

Richey v Johnson, 30 Oh St 288.
Hamilton v Rodgers, 38 Oh St 242,
Wells v Pape, 31 Abs 102.
Holt v Miller, 26 Abs 46; and
Barr v Denney, 79 Oh St 358.

Contra, counsel for appellee, among others, cite the following cases:

Linton v Laycock, 33 Oh St 128.
Bolton v Ohio National Bank, 50 Oh St 290.
MinYoung v MinYoung, 47 Oh St 501.
Carnes v McAfee, 11 N. P. (N.S.) 517.
Lisle v Miller, 21 C. C. N.S. 317.
16 O. Jur. 483-488.
Tax Commission v Oswald, 109 Oh St 36.

While we have examined each and all of the cases cited, we do not deem it necessary to quote from all the listed cases. Nothing short of reading the cases in their entirety will be of any particular benefit. In our judgment the case nearest in point in its facts is that of **Barr v Denney, 79 Oh St 358**, supra.

We go further and say that this case of Barr v Denney is on all fours with the instant case, and therefore determinative of what should be the proper construction of the will of the decedent George W. Bright. The force of the statement as to the application of this cited case may best be shown by setting out in full syllabi 2 and 3:

"Where a testator devises and bequeathes the whole of his estate, real and personal, to his wife during her natural life, except certain amounts to equalize gifts among his children, and then without any express or implied legacy, except as contained in the direction to his executor to convert into personalty and distribute, makes the following dispositive clause, viz.: 'After the death of my wife I desire that the whole of my property, both real and personal, be sold by my executor and after expenses are paid to distribute equally to my legal heirs,' the rule that a bequest in the form of a direction to pay, or to pay and divide at a future period vests immediately, if the pay-

ment be postponed for the convenience of the fund or estate, or merely to let in some other interest, does not apply. Linton v Laycock. 33 Oh St 128, distinguished. Richey, Exr; v Johnson, 30 Oh St 288; Sinton v Boyd, 19 Oh St 30, and Hamilton v Rodgers, 38 Oh St 242, approved and followed."

"3. In such case the direction to the executor to pay or to distribute to the testator's 'legal heirs' confers a contingent interest, which does not vest until the period of distribution; and the direction 'to distribute equally to my legal heirs' is equivalent to a direction to make distribution in accordance with the statutes providing for descent and distribution."

So far as we are able to find the case of Barr v Denney has never been questioned since its decision in 1909, and still remains the law of Ohio under similar facts.

We recognize the principle that courts have formulated certain rules as aid in the construction of wills, but these rules have no application where the intent of the testator is ascertainable from the clear language of the will itself.

For instance, while the law favors the vesting of estates at the earliest time possible, it would not be proper to force a construction so as to accomplish an early vesting where the clear language of the testator indicated a different intent.

We again call attention to the last paragraph of Item XI of the will which reads as follows:

"At the death of said Helen M. Quinn I direct my executors and trustees to pay the unconsumed portion of this one-third (1/3) of my entire estate, if any, to my heirs, share and share alike."

This is the only part of the will wherein any disposition of this unconsumed portion of the one-third is made.

The decedent, George W. Bright, at the time of his death left a very large estate, most of which was in personal property. He gave to his trustees very

broad power as evidenced by Item XV of his will:

"And I do further give to my executors and trustees full power to sell and to convey at such prices, on such terms, and in such manner, any or all my real or personal property which they may deem for the best interests of my estate or the beneficiaries hereof, and generally so to handle and to deal with each and every part and parcel of my estate, real and personal, the same as I might do if living."

From the date of the qualification of the trustees the title, control and management of the entire one-third of decedent's property was vested in the trustees.

Under the provisions of the will the trustees were to pay from the income to the foster daughter the sum of $2000.00 annually with the further direction that in the event the income was not sufficient the balance would be taken from the corpus; that under the language of this will the authorities adequately support the principle that the corpus was vested in the trustee. Citing **Boyd v Talvert, 12 O. 212; Sinton v Boyd, 19 Oh St 30; Barr v Denney, 79 Oh St 358.**

It is argued that the instant case is to be distinguished from the case of Barr v Denney due to the following language as contained in the Barr will:

"After the death of my wife I desire that the whole of my property, both real and personal, be sold by my executor and after expenses are paid to distribute equally to my legal heirs."

We are unable to see that the provisions in the Barr will providing in substance that after the termination of the life estate the property, both real and personal, should be sold and divided, is different in substance from the Bright will, where the property is at all times vested with the trustee with power to sell and direction to distribute at the termination of the life estate. This is very clearly announced in the

2nd syllabus in the case of Barr v Denney, supra.

The reading of the Bright will in its entirety lends aid to the construction to which we are committed.

Special attention is called to Item II where the testator made a special bequest to his sister, Mary E. Pittman in the sum of $5000.00, "if she be living; if she is not living at the time of my decease, then I direct my executors and trustees to pay to her heirs the sum of $5000.00." If the testator had intended the sister or her heirs to receive the remainder after the termination of the life estate, why did he not use the identical language that we find in Item II? It seems to us that the testator had in mind the uncertainty as to the time for distribution, and the changing conditions through death, and hence made the provisions that such distribution would be made to his heirs whoever they might be.

The fact that the statute is changed bringing in as heirs half-brothers, half-sisters and their descendants can make no difference in the proper construction. Our court had this question under consideration in the case of **Hummell v Davis, 22 Abs 49:**

"A testator will be presumed to know that the statutes of descent and distribution could be altered from time to time and that when he used the word 'heirs' in his will he described a class that would be designated and determined by the legislature."

The case of **Smith v Hunter, 86 Oh St 106,** was cited by us as authority for our pronouncement in the Hummell case, supra.

In our judgment the case of **Tax Commission v Oswald, 109 Oh St 36,** on which authority the appellees place major reliance is readily distinguishable from the instant case.

In the Oswald case there was no uncertainty as to the persons who were to receive the remainder after the termination of a life estate given to the widow. The will specifically provided that the remainder should go to named

legatees. Under this definite direction the court could very properly apply the principle that an estate was vested and only possession was delayed. In our judgment the will should be construed through which the distribution would be made to the heirs of the decedent, George W. Bright, as they existed at the time of the death of Helen M. Quinn. Under this situation Elsie Bright would have no interest in the estate.

The finding and judgment of the trial court will be reversed.

Entry may be drawn in accordance with this opinion.

GEIGER, PJ., concurs.
HORNBECK, J., dissents.

HORNBECK, J., Dissenting:

I have reached the same conclusion as the Probate Judge and largely for the same reasons set forth in his opinions but will briefly discuss some of the cases which counsel for the appellants insist are controlling and which it is urged the trial judge did not consider.

We might to advantage examine the situation presented by some of the facts. No. 9 of the original stipulation is to effect that "during his lifetime said George W. Bright was at all times friendly with all the members of his family, to-wit, his sister and his half brothers and maintained toward each and all of them alike a helpful and generous attitude". This stipulation, no doubt, is made as it may reflect some light upon the purpose of the testator, if there be ambiguity in his will, in the use of the last sentence of Item XI wherein he directs his "Executors and Trustees to pay the unconsumed portion of this one-third (1/3) of my entire estate, if any, to my heirs share and share alike".

If, at or about the time of the execution of the will, George W. Bright was maintaining a relationship which could be characterized as a family relationship with his half brothers and sisters there would be considerable force in the stipulation. It develops,

however, that at the time testator made his will on November 5, 1927, his half sister, Anna Bright Miller and his half brother, Col. Elsworth Bright, had been dead more than seven years. His half sister, Kitty Bright, had been dead more than fifteen years, his half brother, Jesse Bright, more than twenty years, his half brother John Lawrence Bright, more than twenty-six years and his half brother, Samuel, more than forty-six years. So that, it is apparent that he did not make his will with any intention that any of his half brothers or sisters individually, as heirs, would benefit to any extent by virtue of the proposition of Item XI of his will, for they were all dead.

No such relationship appears between the testator and heirs or legal representatives of his half brothers and sisters as would require the inference that he would consider them, as his heirs, on a parity with his full sister who was living when he made his will.

Considerable emphasis is placed upon the proposition that the title to the estate defined in Item XI vested in the trustee during the life of Helen Quinn. Citing Boyd v Tolbert, 12 O. 212; Sinton v Boyd, 19 Oh St 30. The title of the trustee, of course, depends upon the meaning of Item XI. In my judgment the title which vested in the trustee was that which passed to Helen Quinn under the item and did not affect the rights vested in the "heirs" of the testator as of the date of his death.

It is basic that the law favors the early vesting of estates and it must be presumed, until the will requires a different construction, that the testator employed technical terms in his will with the knowledge of their meaning and import. So that, if the right to share in the remainder is fixed by Item XI as upon the death of the testator, the time when his will speaks, there was but one person who then answered the technical meaning of the words, "my heirs at law". and that is the sister of the full blood, Mary Pittman. The uncertainty which arises in the use of this language is that the testator em-

ploys the plural form of the noun, heir, followed by the expression, "share and share alike", which lends some credence to the claim that the testator had in mind that his estate would pass to more than one person. When the will was made in 1927 his sister was living as were also three of her children. We do not have the ages of Mary E. Pittman nor of the testator at the time the will was executed, but it is obvious that they were adults well along in life and the testator may well have had in mind that he might survive his sister, Mary E. Pittman, in which event her children in all practical effect would be the heirs of the testator under the law. The language employed by the testator is not in itself strong enough to lend any susbstantial support to the claim that the testator had in mind by the use of the word "heirs" not only his full sister but also representatives of his half brothers and sisters.

Upon the claim that the remainder estate provided in Item XI is a contingent remainder, we are cited to **Richey v Johnson, 30 Oh St 288, Hamilton v Rodgers, 38 Oh St 242, Wells v Pape, 31 Abs 102, Holt v Miller, 26 Abs 461,** and particularly **Barr v Denney, 79 Oh St 358,** upon which the majority opinion relies.

In Richey v Johnson there not only was a requirement that after the life estate created by the item under consideration the farm should be sold and the proceeds of the sale divided equally between the brothers and sisters of the testator and their heirs but further that the children of "any that may be dead" to have the share of their deceased parents. The court in holding that the word "heirs", as employed was not used in a technical sense, did so in the light of all of the circumstances appearing and because of the language of the will, all of which was the more properly reconciled by the construction which the court gave to the item.

The court in the opinion found that not only was the time of payment contingent, depending upon the widow's death, but the gift itself was contingent, depending upon the survivorship of the presumptive legatees, that the item clearly required the determination that the division was not to be made until after the happening of a future event and to be made between persons then living.

In Hamilton v Rodgers there not only was a provision for the payment of certain annuities by the trustees to named persons and during certain periods, but upon the determination of the particular estate created and upon the final cessation of all the annuities, also direction to the trustees to make final distribution of the estate to certain sons of the testator and the heirs of their body. There are many reasons appearing in the instrument requiring the construction adopted by the court, one of which is that the heirs of the body of the sons could not be determined until the death of each son respectively.

The court made plain that the construction adopted was required by the will as a whole.

In Barr v Denney, after the life estate to testator's widow which was not held in trust, it was further provided that "after the death of my wife I desire that the whole of my property, both real and personal be sold by my Executor and after expenses are paid to distribute equally to my legal heirs". The court held that the remaindermen were to be ascertained at the death of the widow and that the remainder was contingent. The opinion at page 367 points out that the fund from which the legal heirs of the testator were to be paid "can not be created nor the extent of the interest in it be determined until the life estate has terminated, the property converted and the expenses paid". The court also took into consideration the relationship of the parties to the will, the circumstances under which it was made, the fact that death was imminent when the testator executed his will, and though he had children in mind the moment before he dictated the item under consideration, "he refrained from bequeathing his property to his children by name

or as a class, * * * ". In the bequest here under consideration there is no necessity for the creation of any fund, it will not be necessary for the trustee to take over property from the life tenant and sell it and divide it. The terms of the will will be met by turning over all of the property to those entitled in form exactly as found as of the date of the death of Helen M. Quinn.

The item under consideration may be reduced into its simplest terms to the following language: "I give * * * Helen M. Quinn one-third (1/3) of my entire estate (if required to pay her an annuity of $2000.00 for and during her natural life). After the death of Helen M. Quinn, my trustee is to pay the unconsumed portion of the aforesaid one-third (1/3) of my entire estate to **my heirs**, share and share alike". (Emphasis ours).

Upon the death of George Bright he had an heir. There is nothing in the will clearly evincing his intention to postpone the vesting of the remainder to some future time. It should, therefore, be held to vest as upon his death. **Linton v Laycock, 33 Oh St 128, Bolton v Ohio National Bank, 50 Oh St 290.** The item fixed a present right to future enjoyment of the remainder in the testator's heirs. There was a contingency as to the amount which might be payable to the remaindermen but the right to participate in this fund was fixed at testator's death. **MinYoung v MinYoung, 47 Oh St 501.** These are the tests which determine that an estate is vested.

The only possible ambiguity in the item is that the testator used the term "my heirs" as distinguished from "my heir". Even so, the law favors the vesting of estates and in cases of doubt or ambiguity in the language employed in creating the remainder a construction is favored that will make the remainder a vested one. **16 O. Jur. 483; Carnes v McAfee, 11 N. P. (N.S.) 517.** In **16 O. Jur. 488,** it is stated that,

"Where a remainder is limited to a class designated as the testator's heirs, next of kin, or by any similar description, the general rule is that, unless there is something to be found in the will showing a different intention, the members of the class are to be determined on the death of the testator and the remainder vests immediately on his death."

On the contrary, a remainder to the heirs of the life tenant is generally a contingent remainder, for, there being no heirs of a living person, until the termination of the life estate no one can claim as the heir of the life tenant. **Lisle v Miller, 21 O. C. C. (N.S.) 317.**

The more recent decision in **Tax Commission v Oswald, 109 Oh St 36,** typifies the attitude of our court of last resort toward the application of the rule that the earliest possible vesting of estates is favored. The will there under consideration gave a life estate to testator's widow with the right to consume the estate of the testator, if necessary, to better her condition.

The second item provided,

"After the death of my wife whatever property remains in my estate, I will and bequeath as follows: One-half (½) to J. W. Oswald or his issue; one-half (½) to J. M. Oswald or his issue."

The third item provided,

"At the time of this distribution, should either of my brothers above be deceased, without leaving issue, then such share shall go to the brother remaining or his issue."

It was held that subject to the life estate of the wife which was coupled with the power to sell, deed and transfer any or all of testator's estate "as she may deem best to better her condition", there was a vested remainder in the whole of the property, subject to be divested in part from time to time or in whole by the exercise of the power, citing **Johnson v Johnson, 51 Oh St 446.**

It will be noted that the second item of the will devised and bequeathed the remainder "after the death of my wife".

The third item began, "At the time of this distribution * * *". The expressions in both of these items carried language which more definitely implied a contingency as to the time of the vesting of the estates than the language in the will immediately under consideration. The Oswald case is further convincing authority for the construction of this will as determined by the trial court.

I agree with the majority that the claim of Elsie Bright is not well made.

The judgment of the Probate Court should be affirmed in its entirety.