IN RE TRUST CREATED BY LAST WILL OF ALFRED
ROLLAND DAVIDSON.
EDWARD L. BOYLE v. STEPHEN R. KIRBY.[1]

February 21, 1947.

No. 34,347.

---

[1]Reported in 26 N. W. (2d) 223.

*Fryberger, Fulton & Boyle,* for appellant.

*Gillette, Nye, Harries, Montague, Sullivan & Atmore,* for respondent.

MATSON, JUSTICE.

Edward L. Boyle, as guardian, appeals from a judgment determining that his ward, Lynn Elizabeth Davidson, will not reach the age

of majority, as defined in her father's last will and testament, until she attains the age of 21 years.

The decedent, Alfred Rolland Davidson, whose legal domicile was Minnesota, died in California on April 14, 1929, and left surviving him a daughter, Lynn Elizabeth Davidson, born May 26, 1926. His will, which was executed in California on March 2, 1928, devised all his property, except one dollar bequeathed to his wife, to his uncle, Stephen R. Kirby, *in trust* for the uses and purposes expressed in the following pertinent provisions:

"(a)    To invest and re-invest all of my properties, in his discretion, during the *minority* of my daughter, Lynn Elizabeth Davidson;

"(b)    To pay the income of my property to my daughter, Lynn Elizabeth Davidson, at convenient intervals not less than quarterly, during her *minority*.

\*    \*    \*    \*    \*

"(d)    If my daughter, Lynn Elizabeth Davidson, should die before her *majority*, then the trust shall immediately cease, and the property then in the hands of the trustee shall be distributed and conveyed to the lawful issue of Lynn Elizabeth Davidson, then surviving; and if she die without such lawful issue before reaching her *majority*, then the property in trust shall be conveyed and delivered to Stephen R. Kirby, personally and individually, free from any trust.

"(e)    When my daughter, Lynn Elizabeth Davidson, reaches the age of *majority*, the entire property remaining in trust shall be distributed, delivered, and conveyed to her, and the trust shall end." (Italics supplied.)

By his will, decedent also appointed his uncle as executor to serve without bond. A codicil executed in California on September 8, 1928, provided in part as follows:

"It is my wish and desire that all my money, property and belongings known as my estate be left in trust for my daughter Lynn after certain deductions are made as named below. Under no circumstances will Dr. Rood or any member of his family or no relation of his, be appointed trustee of my estate.

"I want my uncle, Mr. S. R. Kirby of Duluth, Minnesota, be appointed trustee of my estate during his lifetime and he is to name his own successor as trustee."

At the time of the execution of both the will and the codicil, G. S. 1923, § 8706, provided that a female attained her majority at the age of 18 years. Subsequent to decedent's death but prior to the entry of the final decree in the estate and *prior to the date when the daughter reached the age of 18 years,* § 8706 was amended by L. 1937, c. 435, § 24, to provide that all persons, including females, should remain minors until they should reach the age of 21 years. See, Minn. St. 1945, § 525.80.[2] The daughter, who became 18 years of age on May 26, 1944, will not reach the age of 21 years until May 26, 1947.

On May 2, 1945, Boyle, who in 1944 had been appointed the daughter's guardian, petitioned the court to adjudge the daughter to have reached her majority under her father's will as of May 26, 1944, and further to order the trustee to file a final account and deliver and convey to Boyle, in his capacity as such guardian, all the assets of the trust estate created by the will, and further to order that said trust be thereupon terminated. The trial court found and adjudged that the daughter did not, when she was 18 years old, reach the age of majority within the intent of her father's will; that she would not reach such majority until the age of 21 years; and that until she reached such latter age she was not entitled to a distribution of the assets of the trust estate and a termination of the trust.

■ In his will the testator used the term "majority" three times and its antonym, "minority," twice. Before proceeding to a determination of testator's intent, it is obviously desirable to clarify the meaning and nature of these terms. One is a counterpart of the other. It is elementary that a person who has reached his *majority* has thereby arrived at the status or condition of full age whereby he is entitled, at law, to the management of his own affairs and to the enjoyment of civic rights.[3]

---

[2]See, M. S. A. § 525.80, and cf. Mason St. 1940 Supp. § 8992-185.

[3]38 C. J., Majority, p. 339; Bouvier, Law Dictionary (3 Rev.) pp. 2065 and 162; Black, Law Dictionary (3 ed.), p. 1145.

■ ■*Majority* is the age at which the disabilities of infancy are removed. These disabilities, which are in fact personal privileges conferred on infants by the law of their domicile, constitute limitations on the legal capacity of infants, not for the defeat of their rights, but to shield and protect them from the acts of their own improvidence, as well as from the acts of others. King v. Cordrey, 36 Del. (6 W. W. Harr.) 418, 177 A. 303; Restatement, Conflict of Laws, § 119; 43 C. J. S., Infants, § 19. The removal of these disabilities does not result in the creation of any new rights, but merely in the termination of certain personal privileges. There is no vested property right in the personal privileges of infancy. Young v. Sterling Leather Works, 91 N. J. L. 289, 102 A. 395. In short, *majority* or *minority* is a *status* and not a fixed or vested right. Springstun v. Springstun, 131 Wash. 109, 229 P. 14, 40 A. L. R. 595; Coleman v. Coleman, 51 Ohio App. 221, 200 N. E. 197; 21 Minn. L. Rev. 892. *Status,* which takes a variety of forms, is simply a legal personal relationship or condition, not temporary in its nature nor terminable at the mere will of the parties, with which third persons and the state are concerned. Restatement, Conflict of Laws, § 119. Confusion results from a failure to observe the fundamental distinction between *status* and the rights which arise thereunder. In re Estate of Youmans, 218 Minn. 172, 178-179, 15 N. W. (2d) 537, 540, 154 A. L. R. 1171. If the true concept of *status* is kept in mind, it will at once become apparent that the *status* of *majority* or *minority* by its very nature does not of itself involve any vested right.

■■■ Obviously, the will was drafted by a lawyer or other person skilled in the use and meaning of legal terminology. In the light of this significant fact (In re Estate of Boutelle, 218 Minn. 158, 15 N. W. [2d] 506, 154 A. L. R. 966) and in the absence of any evidence to the contrary, it is to be presumed that the testator, in using such technical words as "majority" and "minority," which have a definite and long-accepted meaning, used them correctly and with the intent that they be interpreted in conformity with law. In re Trust Under Will of Holden, 207 Minn. 211, 291 N. W. 104.[4] The use of these

---

[4]See, also, In re Estate of Chase, 182 Minn. 271, 275, 234 N. W. 294, 295;

technical words according to their established meaning is in harmony with the dominant intent of the testator. Taking the will and codicil by their four corners, in the light of the surrounding circumstances, we find, without the aid of rules of construction, a systematic plan and manifest intent on the part of testator that his entire estate, with the exception of one dollar bequeathed to his wife, should be held in trust until his daughter should be free from the disabilities of infancy and entitled to the management of her own affairs. Naturally, he did not analyze the term "majority" with all the niceties of a legal technician. Nevertheless, it is obvious that he used the term to indicate that stage in his daughter's development when she could act in her individual capacity without the intervention of a guardian or other legal representative. He was thinking in terms of *status,* and not of any certain arbitrary age in specifying when the trust should terminate. The fact that at the time of making the will a female under Minnesota law reached her majority at 18 years of age is here merely a coincidence and of no significance as indicating an intent one way or the other. We do have, however, testator's unmistakable determination that his uncle's guiding hand should safeguard the estate for his daughter during her entire period of infancy, free from all outside interference, and this even to the extent that if the uncle could no longer himself act as trustee he should name his own successor. It would indeed be a travesty of testator's carefully made plans and a defeat of his dominant intent so to interpret his will that by reason of a statutory change in the age of majority the control of his estate should even for a short time pass from testator's carefully selected trustee to a guardian. We are not here concerned with the motives or the wisdom of testator's action in going out of his way to make it clear that certain persons should never be appointed trustee or in his emphasis that the responsibility should ever rest with his uncle until his daughter attained a legal status entitling her to a direct transfer of the estate without a guardianship conduit. We have also the presumption, especially where a will is drawn by an

In re Estate of Fretheim, 156 Minn. 366, 194 N. W. 766; 6 Dunnell, Dig. & Supp. § 10262a; 69 C. J., Wills, § 1172.

experienced scrivener, that a testator not only knows the law of his state as it stood when the will was drawn, but also that he knew that the legislature could change or repeal the law. Bartlett v. Ligon, 135 Md. 620, 109 A. 473; Ohio Nat. Bank v. Bright (Ohio App.) 34 Ohio L. Abs. 453, 38 N. E. (2d) 76; Kohler's Estate, 199 Pa. 455, 49 A. 286. Hence, in the absence of evidence to the contrary, we must assume that testator in his choice of terminology recognized that the statute fixing the age of majority might be amended. There is certainly no justification for drawing an inference that testator in his use of the term "majority" intended to exclude the possibility of a change in statutory age. Holmes v. Alexander, 82 N. H. 380, 134 A. 536.

■ Plaintiff seeks comfort in various rules of construction, such as that a testator favors his own kin; that where the language is ambiguous and subject to more than one construction the first taker is to be regarded as the primary object of the testator's bounty; and that the language of the will must be construed with reference to the statutory law existing when the will was drawn. Whatever merit these rules may have in their proper place, it is elementary that when the language of a will is free from reasonable doubt there is obviously no room for construction or interpretation. In re Trusteeship Created Under Last Will of Ordean, 195 Minn. 120, 261 N. W. 706. Taking into consideration the surrounding circumstances, we must hold that testator's language is free from ambiguity and expresses a manifest intent. We are not confronted with ambiguity. In the construction of a will, the end sought is the intent of the testator. Recognized rules of construction are not to be overlooked where their aid is necessary, but they are not technical guides which will be followed to a result contrary to the intent derived from a reading of the will as a whole. In re Estate of Freeman, 151 Minn. 446, 187 N. W. 411. Rules of construction have little weight where it is obvious the testator had an intent, which though imperfectly expressed, may be determined from the will as a whole in the light of the surrounding circumstances. 6 Dunnell, Dig. & Supp. § 10257.

■ The will here provides that if the daughter dies before reaching her majority without leaving lawful issue the entire trust estate shall be conveyed to the trustee personally, free and clear of the trust. The guardian contends that upon the death of testator a right accrued to the daughter to receive the property at the age of 18 years, and that "this right could not be curtailed by the legislature by extending the age at which she would receive the property to 21 and thus increase for three years the time within which said property might be forfeited as it were to the trustee individually." As heretofore indicated, testator in using the term "majority" referred only to a *status* and not to the accrual of vested rights at a certain age. The original status of 18 years had been changed to 21 long before the daughter reached the age of 18, and therefore no rights have as yet accrued to her under any majority status specified in the will. The status itself does not constitute a vested right. Obviously, the legislature in changing the age of majority neither curtailed nor impaired any right of the daughter. It is conceded that the domiciliary legislature has the constitutional power to fix a person's status.[5] It likewise has the power to change the status of majority by postponing the age at which the disabilities of infancy shall be removed.[6] In Springstun v. Springstun (see footnote 6), a case involving the validity of a statute postponing the age of majority of a female from 18 to 21 years, the court in holding that it is immaterial that a change in statute may incidentally affect certain personal privileges, said (131 Wash. 112, 229 P. 16, 40 A. L. R. 595):

[5]In re Estate of Youmans, 218 Minn. 172, 178, 15 N. W. (2d) 537, 540, 154 A. L. R. 1171; State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329; 1 Dunnell, Dig. & Supp. § 1556a; 3 Dunnell, Dig. & Supp. § 4433b; 21 Minn. L. Rev. 891; 43 C. J. S., Infants, § 20; 11 Am. Jur., Conflict of Laws, §§ 25 and 16.

[6]Springstun v. Springstun, 131 Wash. 109, 229 P. 14, 40 A. L. R. 595; Young v. Sterling Leather Works, 91 N. J. L. 289, 102 A. 395; Coleman v. Coleman, 51 Ohio App. 221, 200 N. E. 197; Pickering v. Peskind, 43 Ohio App. 401, 183 N. E. 301; 27 Am. Jur., Infants, § 5; 43 C. J. S., Infants, § 19; Wilson v. Greer, 50 Okl. 387, 151 P. 629.

"It is true, also, that laws affecting the status of individuals sometimes materially affect their personal privileges. It was so in this instance. The amendatory statute subjected the daughter to parental control for three years longer than she would otherwise have been subjected. By it her right to manage, control and convey her property, her right to her personal earnings, her right of personal freedom, and many other rights which could be enumerated as belonging to persons of full age, were postponed for a like period. But this, as we say, does not argue against the validity of the law. *The condition being a status, it was one which the legislature had the right to impose.*" (Italics supplied.)[7]

The judgment is affirmed.

Affirmed.

---

[7]Although the issue is not involved in the instant case, it is helpful to an understanding of the nature of *status* to observe that amendatory legislation postponing the age of majority has been held not retroactive so as to affect preëxisting substantive rights *arising under* a majority status which had come to fruition before the amendatory act took effect. See, Springstun v. Springstun, 131 Wash. 109, 229 P. 14, 40 A. L. R. 595, *with annotation at 598;* Pickering v. Peskind, 43 Ohio App. 401, 183 N. E. 301; State ex rel. Brown v. Lyons, 104 Kan. 702, 180 P. 802; Smith v. Smith, 104 Kan. 629, 180 P. 231; Nahorski v. St. Louis Elec. Terminal Ry. Co. 310 Mo. 227, 274 S. W. 1025; 27 Am. Jur., Infants, § 5; see, Wilson v. Greer, 50 Okl. 387, 151 P. 629.