**WELLES et v PAPE**

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1601.   Decided Jan. 15, 1940.

Orel Myers, Dayton; Herbert Mills, Dayton, for defendant-appellant.

Irvin Bieser, Dayton, for plaintiffs-appellees.

**OPINION**

By GEIGER, J.

This case had its inception in the Probate Court of Montgomery County, Ohio, based on a petition for direction and a declaratory judgment in construing Item 8 of the last will and testament of Mary E. Garst, deceased, who died August 30, 1891.   The prayer of the petition was for a declaratory judgment and direction of the court especially as to whether, by the terms of Item 8, a fee simple title to the real estate vested in the plaintiffs as of the date of the death of the testatrix or as of the date of the death of Nettie G. Frazier, who died February 17, 1938.

The cause was submitted to the Probate Court on an agreed statement of facts.

Item 8 reads, in part, as follows:

"I devise my real estate * * * to my daughter, Nettie G. Frazier, of Wichita, Kansas, during life with the charge and conditions, however, that she shall pay one-half of the net income therefrom (after payment of taxes, repairs and insurance), to my daughter, Mary G. Wells, of Des Moines, Iowa."

"After the death of said Nettie G. Frazier, I devise the fee in said real estate to the heirs of the bodies of my said daughters, per capita and not per stirpes, share and share alike; said premises to be charged with the payment of one-half of the net rental thereof to said Mary G. Wells during her life." * * *

"The above devise to my daughters to be in full of their share of my estate."

The court found that at the death of Mary E. Garst on the 30th of August, 1891, the testatrix by her will intended that her two daughters should enjoy the estate during their lifetime and that at their death the estate should go, share and share alike, to the heirs of their bodies who were living at the time of the death of Nettie G. Frazier, the life tenant, and that such remaindermen should not take by representation but should take per capita; that upon the death of Nettie G. Frazier, on the 17th day of February, 1938, there existed only a contingent remainder in the heirs of the bodies of the two daughters of the testatrix, which upon the death of Nettie G. Frazier became a vested remainder in fee in the testatrix's three grandchildren, the heirs of the bodies of the two daughters, and that each of said granddaughters became vested with the fee of the undivided one-third of the estate passing under Item 8 of the will and were entitled to a division of the net rental on the same basis. It was by the court ordered and adjudged that the three granddaughters, at the death of Nettie G. Frazier, became vested with a fee simple title of the undivided one-third of the property in question.

A motion for new trial was filed and overruled and notice of appeal given.

The Agreed Statement of Facts is to the effect that Mary E. Garst, the maternal grandmother of all the parties, died testate leaving a will dated May 25th 1889; that Mary E. Garst, at the time of her death, left surviving two daughters, Nettie G. Frazier and Mary G. Welles, and six sons; that Mary G. Welles died on the 27th day of May, 1910, leaving two daughters, granddaughters of Mary E. Garst, as the surviving heirs of her body; that Nettie G. Frazier, the other daughter of Mary E. Garst, died on the 17th day of February, 1938, leaving one daughter, a granddaughter of Mary E. Garst, namely, Mildred Frazier Pape, as the sole surviving heir of her body; that Mildred had had one brother, George Frazier, born on the 30th day of April, 1882, who died unmarried on the 6th of February, 1898, after the estate provided in Item 8 came into being and during the lifetime of both Mary G. Welles and Nettie G. Frazier; that the conditions under Item 8 of the will were not performed until the death of Nettie G. Frazier in 1938.

The point at issue is whether the estate vested in fee in the grandchildren at the date of the death of the testatrix, subject to the life estate provided, or whether there was a contingent remainder which vested in the heirs of the bodies of the daughters at the time of the death of Nettie G. Frazier.

The plaintiffs in the case are the two surviving children of Mary G. Welles, while the defendant, Mildred Frazier Pape, is the surviving heir of the body of Nettie G. Frazier.

The question involved is whether or not Mildred Frazier Pape inherited from her deceased brother, George, who died in 1898, a one-fourth interest of said estate. If she inherited from her brother, she would now be entitled, not only to her one-fourth interest in the estate, but to his, entitling her to a one-half interest in the estate. If the estate did not vest until the death of Nettie G. Frazier, in 1938, then Mildred Frazier Pape did not inherit from her deceased brother a one-fourth interest and each of the three grandchildren would be entitled to an undivided one-third interest.

The court below filed a very interesting opinion citing and reviewing many cases and other authorities and concluded that there was only a contingent remainder in the heirs of the body of the two daughters of the testatrix

which became vested upon the death of Nettie G. Frazier; that upon the death of the testatrix there was no present fixed right to further enjoyment in any particular person and that there was an uncertainty as to the right of the persons to enjoy the estate and that such persons were not ascertainable until the death of Nettie G. Frazier; that during the life of the life tenant, the interests of the grandchildren were contingent and became vested at the time of the death of Nettie G. Frazier and that those persons living at that time who were the heirs of the bodies of Mary G. Welles and Nettie G. Frazier took a vested remainder in said estate share and share alike. The opinion of the court was embodied in an entry heretofore alluded to.

Counsel for each side have filed interesting briefs, but neither have followed the new rule, Number VII, in its entirety. We trust that in the future a closer adherence to that rule will be maintained as it would be of great assistance to the court.

The court has read most of the cases cited and finds that some are pertinent and some are not.

### THE LAW

There are certain well established rules which the court is required to follow in interpreting a will and we summarize some from **O. Jur., Vol. 41, P. 575, §456 et seq.**, to the effect, that there is no fixed rule applicable to construction of all wills. They are liberally construed in order to give effect to the testator's intention, the determination of which is the cardinal rule in the construction of a will.

"The cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator, which has been variously declared to be the 'paramount rule', the 'primary guide', the 'sole guide', the 'guiding spirit', and the 'polar star'."

"All rules of construction, however logical or authoritatively promulgated, are only useful or applicable insofar as they aid in arriving at the correct conclusion as to the intention of the testator as disclosed by his will."

The rule is thus stated by Davis, J. in the case of **Barr v Denney, 79 Oh St 358 at page 366:**

"All agree that the testator's intention when once ascertained must control, if the intended provision is lawful; and that such intention must be sought in the terms of the whole will. * * * Technical rules may be used as aids to interpretation but can not control if they be in conflict with the apparent intention of the testator."

Authorities may be multiplied supporting this proposition, but it is so well gounded that no authorities, as a matter of fact, need be quoted in its support.

By Item 8 the testatrix devised her real estate to her daughter, Nettie G. Frazier, during life with the condition that she shall pay one-half of the net income therefrom to her daughter, Mary G. Welles.

"After the death of said Nettie G. Frazier, I devise the fee to the heirs of the bodies of my said daughters, per capita and not per stirpes, share and share alike."

There seems to this court to be no doubt of the intention of the testatrix to give to her two daughters a life estate in the real estate and that after the death of Nettie, the property should be then divided between the heirs of the bodies of her two daughters, per capita and not per stirpes.

One who takes per stirpes takes through representation. One who takes per capita takes directly in their own right, not because they represent any one else.

If Mildred Frazier Pape should take one-fourth of the estate as a representative of her deceased brother, then she would be taking, not per capita but per stirpes. In order to avoid this the appellant resorts to the claim that the de-

ceased brother, living at the time the will was made, took a vested remainder upon the death of the testatrix and numerous cases are cited to sustain this view. Many of them are based upon the fact that the bequest is made to children and not to "heirs".

It has been frequently held that the term "heirs" when used in a will is flexible and should be so construed as to give effect to the manifest intention of the testator, as ascertained by due consideration of all the provisions of the will. But it is likewise true that where the word "heirs" appears in a will it is to be construed in its strict technical sense, unless it clearly and manifestly and very certainly appears that the testator used it in a different sense.

The writer of this opinion had occasion, more than twenty years ago, to go thoroughly into this question in the case of **Mills v Mills, 20 N. P. (N.S.) 501.** The same will was construed by the Supreme Court in the case of **Cultice et v Mills, 97 Oh St 112.** While in those cases it was held that the testator had used the word "heirs" as synonymous with "children" as ascertained from a construction of the entire will, and it was manifest that the testator intended to use the word, not in its technical sense, but to designate children, yet the rule is still that to show the intent of the testator to use the word as "children" such intention must be manifest and it must certainly appear that that was the intention of the testator.

There appears nothing in this will by which we may determine that the testatrix used the word "heirs" in the sense of "children". The Agreed Statement of Facts shows that the will was drawn by a skillful attorney and had that been the intent of the testatrix, such language would have been used as to leave no doubt concerning it.

Our next consideration is as to whether, under the terms so interpreted, there is a vested or contingent remainder in the heirs of the two sisters. **16 O. Jur. P. 488, §108** states:

"A remainder to the heirs of the life tenant is generally a contingent remainder, for, there being no heirs of a living person, until the termination of the life estate no one can claim as the heir of the life tenant. Accordingly; where in a will property is devised to a person for life and at his death to his heirs at law in fee, the devise does not vest a remainder in the apparent heirs of the life tenant at the date of the testator's death, but creates a contingent remainder which will vest in such person or persons as are found to be the heirs of the life tenant at the time of his death."

**41 O. Jur., §543** states:

"The terms 'heirs', 'heirs of the body', 'heirs at law', 'lawful heirs', and the like, whether used in the singular or plural signify in their strict and technical import the person or persons appointed by law under the Statute of Descent and Distribution to succeed to the estate in case of intestacy. * * * The presumption, therefore, being that the word is used in its legal and technical sense and courts will not depart from that interpretation of the word unless the instrument itself and all the surrounding circumstances indicate that the testator intended to use it in some other sense."

There is nothing apparent in the Eighth Item of the will that would be the slightest indication that the testatrix intended to use the word in other than its legal and technical sense.

Numerous cases may be and have been cited, but they all support the principles as we have enunciated them above and it would be idle to separately examine each case. No two wills are alike and consequently an infinite variety of constructions may be discovered. We have only to deal with the will as it is written. The opinion of the court below is clear and conclusive and

we endorse the conclusions there reached.

Judgment affirmed. Cause remanded.

HORNBECK, PJ. & BARNES, J., concur.

## APPLICATION FOR REHEARING

No. 1601. Decided Feb. 7, 1940.

BY THE COURT:

This matter is now considered upon the application for rehearing filed by counsel for defendant-appellant on January 25, 1940.

We have carefully re-read our former opinion and re-examined the authorities there cited and have likewise studied the accompanying memoranda filed by applicant.

The applicant enumerates six separate reasons, which are asserted in support of the application. While six reasons are asserted, they might all be encompassed in the single reason, that, in the opinion of the applicant, the Court's decision was erroneous and should be now re-considered and reversed.

We find nothing new presented in the memoranda which was not given consideration at the time the opinion was announced.

The case is of interest and possibly involves enough to justify an application for certification to the Supreme Court, but so far as this Court is concerned, we find no reason to reverse our former position.

Application for rehearing denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.

## APPLICATION FOR ORDER TO CERTIFY RECORD

No. 1601. Decided Feb. 29, 1940.

BY THE COURT:

This matter is before the court on an application for an order certifying the record to the Supreme Court for the reason that the judgment upon which this Court has agreed is in conflict with the judgment pronounced upon the same question by the Court of Appeals of Ashland County, Ohio, in the case of **Imhoff v Imhoff et,** reported in 59 **Oh Ap 394.** The **Constitution, Art. IV,** Sec. 6, provides that:

"and whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state the judges shall certify the record of the case to the Supreme Court for review and final determination."

It is earnestly asserted by defendant-appellant that the decision rendered by this Court in the case of **Welles et, Appellees v Pape, Appellant, 62 Oh Ap P. 432,** is in conflict with the judgment of the Ashland County Court of Appeals. We have carefully read and compared the two decisions and arrive at the conclusion that they are not in conflict upon the "same question". It is true they both relate to a construction of an item of a will. In the Welles case this Court held that under the will there in question there is a contingent remainder to be vested upon the death of a life tenant. The Imhoff case holds that the will there under consideration creates a vested interest in the class named, the members of which are to be determined as of the time of the death of the testator and not as of the time of distribution. Comparing the provisions of the two wills we detect a marked difference which need not be commented upon, but which in our judgment renders the two decisions not in conflict upon the "same question".

Application for order certifying conflict denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.