KOHLER, APPELLANT, v. BRINDLEY, EXR., ET AL., APPELLEES.[*]

(No. 470—Decided June 14, 1961.)

*Messrs. Kaylor & McKinley,* for appellant.
*Mr. A. F. Brindley, Jr.,* and *Mr. Carlos A. Faulkner,* for appellees.

YOUNGER, J. This is an appeal on questions of law and fact from a judgment rendered in a declaratory judgment proceeding in the Common Pleas Court of Hardin County, in which proceeding the court was asked for advice and instructions with respect to the disposition of assets in the estate of Minnie I. Kohler, deceased.

The will was executed in 1937, when the testatrix was 67 years of age and a widow of a good many years and when her only heir-at-law, Ray Willis Kohler, an adopted son, was 30 years of age.

We are concerned here with item 2 and item 5 of the will, which are as follows:

"Item 2. I give, and devise to my dear son Ray Willis

Kohler, for and during his natural life, my farm of one hundred fifty-seven acres situate in Pleasant Township, Hardin County, Ohio, and after his death I give and devise said farm to his children, and in event he dies without children or their issue, then I direct that said farm shall devolve as hereinafter set forth below.''

''Item 5. I give, devise and bequeath the net income from the remainder of my securities and real estate, excepting the above one hundred and fifty-seven acres and five hundred dollar legacy, equally to my brother, Warren Ichler, my sister, May M. Ichler, and my son, Ray Willis Kohler, for and during their natural lives only and the survivor of them, the share of the living to be increased accordingly on the death of any.of them, except that if Ray Willis Kohler dies before the other two or either of them, leaving issue, then said issue shall take the share of the said Ray Willis Kohler during the lifetime only of said Warren Ichler and May M. Ichler or the survivor of them; and I further direct and empower my executors as trustees to manage said property, collect the dividends, interest, and rentals, and annually divide the same according to the foregoing provisions and instructions and make proper report thereof to the court; after the death of the last of the three above named persons, I give, devise and bequeath that my estate be divided equally among my legal heirs and direct that my executors as trustees distribute the same accordingly and render final account thereof.''

The testatrix died July 18, 1952. Ray Willis Kohler died testate February 6, 1959, as a result of an accident, without issue, and leaving the plaintiff, his widow, as his sole heir-at-law and sole beneficiary. May M. Ichler predeceased the testatrix and Warren Ichler now past 82 was never married and is at present the sole beneficiary of the income from the trust, so far as the records before this court are concerned. However, in the reply brief of appellants filed in this court on March 15, 1961, it is stated that he died some two weeks previously. Ruah Stevenson, a sister of the testatrix, and who received a legacy of $500 under item 3 of the will, is the mother of five children. She and her children are parties to this action, as is Warren Ichler. The estate was appraised in 1952 at over $130,000 and has increased in value considerably since that time. It is the

claim of plaintiff, appellant herein, that the estate of Minnie Kohler vested as of the date of her death in Ray Willis Kohler and that as his sole beneficiary the entire estate of Minnie Kohler passes to her.

Excellent briefs with numerous citations have been filed, with strong arguments and theories advanced as to the manifest intention of the testatrix; the theory of exclusion; whether the estate vested at the death of the testatrix or at the death of Warren Ichler; and whether or not the 157-acre farm is testate or intestate property. The Common Pleas Court found this farm to be intestate property which was decreed to the plaintiff as the sole beneficiary under the will of Ray Willis Kohler.

A careful study of these provisions of the will, taken in connection with the will as a whole, is, in my opinion, not only convincing but conclusive of three conclusions.

In the first place, the intention is clearly manifest that her "dear son" have an income from the 157 acres "during his natural life." Whether this intention was motivated by a desire or an obsession to prevent the wife of her "dear son" from obtaining a dower interest in the farm or from inheriting from him in the event he predeceased her, as argued by the defendants; whether it was for the purpose of placing this farm beyond the reach of the possible creditors of her "dear son"; or whether she was fearful of the manner in which he might dispose of it, or the proceeds therefrom by will; are interesting questions to argue or to theorize about, but they are not important, nor are they dispositive of the questions with which we are presented.

In the second place, plain and simple words are used to provide that if her son had children—and at his age of 30 when the will was executed, she had every reason to hope for grandchildren—they would be well taken care of. By the provisions of item 2 they would receive the 157 acres in fee simple at the son's death. By the provisions of item 5 they would receive his share of the income from the trust after his death and until the death of the last survivor, and at the death of the last survivors under the trust, if they survived, they would be "my legal heirs" and inherit under the provision "that my estate be divided equally among my legal heirs."

In the third place, it is clear from the language used that in setting up the trust in item 5 the testatrix, by "excepting the above one hundred and fifty-seven acres," the total income from

which by item 2 would go to her son, provided that the income from the remainder of her estate should go to the natural objects of her bounty, her son, or in the event of his death to his children, her bachelor brother and old maid sister. Her son would thus receive, in addition to the income from the 157 acres, one-third of the income from the remainder, with the prospect of receiving more in the event of the death of either or both of his much older uncle and aunt.

We here see a well-conceived plan to keep this entire property, its income and its proceeds in the family. Nothing was given to any religious or charitable institution or to friends.

However, in will construction cases it is not for the court to attempt to ascertain what the testator meant to say but it must determine his intention or what he meant by what he did say. Any other rule would result in many wills being badly misconstrued, and words having a settled meaning or common useage could be slanted or even ignored to give life to what the court thought the testator intended to say.

Therefore, we must look to the words actually used by the testatrix and in view of the fact that Ray Willis Kohler, who had only a life estate, died without children, the phrase ''said farm shall *devolve* as hereinafter set forth below'' governs the disposition of the 157 acres. By item 5 a trust is created from ''the remainder of my securities and real estate, excepting the above one hundred fifty seven acres.'' This provision does not dispose of the 157 acres, nor exclude it from her estate, nor make it intestate property. It merely excludes it from the corpus of the trust. She could have said ''excepting the above one hundred fifty-seven acres and my securities'' and set up the trust out of her other farms and real estate.

This court is of the opinion that the conditions having arisen by which the 157 acres are, by the terms of the will, to devolve as provided, the 157 acres are included in the words ''my estate'' and upon the death of the last survivor under the trust, said 157 acres, together with the corpus of the trust, are to be ''equally divided among my legal heirs'' as of the termination of the trust, which, under the facts, would be Ruah Stevenson, if living, and if not living then her issue.

*Judgment accordingly.*

Guernsey, P. J., and Middleton, J., concur.