CASEY, EXRX., ET AL., APPELLEES, *v.* GALLAGHER ET AL., APPELLEES; DEIBEL ET AL., APPELLANTS.
CASEY, EXRX., ET AL., APPELLANTS, *v.* GALLAGHER ET AL., APPELLEES. (Two cases.)

44

(Nos. 40061, 40084 and 40085—Decided June 28, 1967.)

46

*Mr. Jerry F. Whitmer,* for plaintiff-appellees in case No. 40061 and appellants in cases Nos. 40084 and 40085.

*Messrs. Manchester, Bennett, Powers & Ullman* and *Mr. John F. Elsaesser,* for the appellants in case No. 40061.

*Mr. Roger V. Day, Mr. Earl F. Cailor, Mr. Shelby V. Hutchins, Messrs. Kincaid, Palmer & Randall, Mr. Bert Rigelhaupt, Mr. Paul L. Booth* and *Mr. John A. Schwemler,* for appellees.

O'Neill, J.  In the instant cause this court is called upon to review the construction placed upon the will of John Gallagher, testator and settlor herein, by the Court of Appeals for Mahoning County.

It is settled beyond all possible doubt that the function of the court in a will construction case is to determine and apply the testator's intention, as expressed in the language of the whole will, read in the light of the circumstances surrounding its execution.

The Court of Appeals found, and this court agrees, that John Gallagher's will reveals a general intention or overall

design, first to benefit his wife and natural children with trust income for their lives, and further to retain his property in his bloodline after the first purpose is accomplished. In every situation specifically provided for in the will, blood relatives of the testator are to take (except those provisions for the benefit of testator's own wife).

Thus, upon the death of a child of testator "leaving a child or children the issue of * * * [testator's child's body]," such issue are to take the dead parent's share of income. Standing alone and unmodified by the context of a will, the term, "issue," would not include even adopted children (56 Ohio Jurisprudence 2d 154, Wills, Section 622; 3 Restatement of the Law, Property, Sections 292, comment *a,* and 287), and the inclusion of the language, "of their bodies," strengthens that conclusion.

As a further indication of intent to confine income payments to blood relatives, the testator provided a gift over to his surviving children or their issue if one of his children died without leaving issue of such child's body. Finally, the distribution of corpus is directed to be made only to the heirs of testator's children "who are of my [testator's] blood."

This court has on other occasions recognized the force of such a manifested intention when a situation arose that was not specifically provided for in the will under examination. See *Cleveland Trust Co., Trustee,* v. *Frost* (1957), 166 Ohio St. 329, 333, 142 N. E. 2d 607; *Tiedtke, Exr.,* v. *Tiedtke* (1952), 157 Ohio St. 554, 561, 106 N. E. 2d 637. This court has also declared in another context that: "Blood relationship has always been recognized as a potent factor in determining rights under a will." *Third National Bank & Trust Co., Trustee,* v. *Davidson* (1952), 157 Ohio St. 355, 105 N. E. 2d 573. In other states it has been said that: "It may be safely laid down that of two equally probable interpretations of a will, that shall be adopted which prefers the family and kindred of the testator to other strangers." Schouler, Wills (5 Ed.), Section 479; *In re Estate of Hartson* (1933), 218 Cal. 536, 24 P. 2d 171; *Hart* v. *First National Bank of Jackson* (1958), 233 Miss. 766, 778, 103 So. 2d 406.

Therefore, where there is no language of countervailing meaning or other evidence of a different intent, testator's well-

manifested intention that only blood relatives should take under the will must be given effect.

By the will, upon the death of the last survivor of testator's children (Elizabeth Deibel, age 86), the trust is to terminate and the trust corpus is to be conveyed by the trustees "to the lawful heirs of my said children, who are of my blood an equal share thereof to the heirs of each of my children * * *."

The trial court held that in using the word, "heirs," the testator meant merely his grandchildren as a class, and that, therefore, remainders vested in each member of the class who was alive at testator's decease. It was held further that the grandchildren alive at his decease were not required to survive to a later date to be entitled ultimately to take. See 56 Ohio Jurisprudence 2d 189, Wills, Section 661. Had the trial court been correct in its holding that the testator used "heirs" to mean his grandchildren as a class, an inference would have been raised that the interests in corpus vested in them, perhaps indefeasibly, when the will became effective at the testator's death. 20 Ohio Jurisprudence 2d 391-392, Estates, Section 146; 3 Restatement of the Law, Property, Section 249, comment *a*. See 2 Scott on Trusts (2 Ed.), 958, Section 128.8. Compare 20 Ohio Jurisprudence 2d 396, Estates, Section 148; 3 Restatement of the Law, Property, Section 296(1)(b)(c), comment *a*.

However, the Court of Appeals correctly applied the previous decisions of this court in holding that the testator did not use the word, "heirs," to mean his grandchildren as a class, but rather meant those designated by the statute of descent and distribution to inherit from each of his children as of the time of application of the statute. This is the usual meaning of the word in the absence of evidence sufficient to establish a contrary intent. 56 Ohio Jurisprudence 2d 134 and 135, Wills, Section 603; 3 Restatement of the Law, Property, Sections 305 and 308.

The will in this cause shows an opposing, rather than an interchangeable, use of "children" and "heirs." Nowhere are specified children of the testator referred to in the appositive or otherwise as "heirs." The will in this cause was apparently prepared by an attorney, who would be expected to know the usual legal meaning of the term, "heirs." Grandchildren

are referred to in the income provisions of the will in more exact legal terminology, such as "issue" of children, or "children, the issue of * * * [his own] children's bodies," and not by a loose use of the term "heirs." Nor can any inference be raised from the circumstance that the heirs of testator's children of his blood have turned out thus far to be grandchildren in every case. Literally, under the phrase, "heirs of my said children * * * of my blood," blood relatives of testator other than grandchildren—such as great-grandchildren—could take.

Merely because testator knew and loved his grandchildren equally well does not mean, as the trial court held, that he intended to give indefeasibly vested remainders to the class consisting of his grandchildren. It is at least as probable that he loved his own *children* equally and desired to benefit their families equally.

In short, this cause differs from *Cultice* v. *Mills, supra, Jones* v. *Lloyd* (1878), 33 Ohio St. 572, and *Jones, Admr.,* v. *Lewis* (1941), 70 Ohio App. 17, 44 N. E. 2d 735, relied upon by appellants, and other similar cases cited in 56 Ohio Jurisprudence 2d 141, Wills, Section 608, wherein the peculiar language of the wills involved affirmatively showed that testator meant "children" when he said "heirs." But this cause is like *Holt* v. *Miller, supra,* and *Miller* v. *Miller* (1906), 9 C. C. (N. S.), 242, affirmed, 77 Ohio St. 643, and *Welles* v. *Pape* (1940), 63 Ohio App. 432, 27 N. E. 2d 169, in that here the will does not clearly show an intent to use "heirs" in other than its usual legal meaning.

The consequence of a holding that testator used "heirs" in its usual legal sense is that the class of testator's grandchildren alive at his death did not take vested remainders then. It is the *heirs of testator's children* who are to take under the will and those claiming as heirs of a particular child of testator must have survived such child to sustain their claim, for no one is the heir of a living person. 3 Restatement of the Law, Property, Sections 249, 308 and 309; 20 Ohio Jurisprudence 2d 394 and 397, Estates, Sections 148 and 149; *Welles* v. *Pape, supra* (63 Ohio App. 432). See annotations, 65 A. L. R. 2d 1408, 1413, Section 6; *Ib.,* 1418, Section 12; 49 A. L. R. 174, 177-178; 127 A. L. R. 602, 604; and 169 A. L. R. 207, 208.

It is clear, therefore, that neither Christopher Deibel, who predeceased his mother, Elizabeth Deibel, nor any one claiming through him can claim an interest in the trust corpus at Elizabeth Deibel's death. Christopher acquired only a contingent interest in the corpus of the trust on testator's death, which interest can never become possessory, because the contingency of his being an heir of Elizabeth is impossible of fulfillment. Further, he left no lineal descendants who could claim directly as heirs of Elizabeth. Section 2105.06(A)-(F), Revised Code.

However, the foregoing does not dispose of the claim of Mary H. Casey, representing the estate of the testator's grandchild, John P. Gallagher, who did survive testator's son, Patrick Gallagher. Mary H. Casey claims that an interest in corpus vested in John P., as one of Patrick's heirs at Patrick's death, which interest was devisable by John P.'s will. See Section 2131.04, Revised Code.

Mary H. Casey invokes the definition of a vested remainder, the rule in favor of early vesting, and the usual rule of construction for the time of determination of a person's heirs, which time is the date of such person's death. *Holt* v. *Miller, supra* (133 Ohio St. 418); 3 Restatement of the Law, Property, Sections 249, 308-309; 20 Ohio Jurisprudence 2d 394, Estates, Sections 148 and 149; *Welles* v. *Pape, supra* (63 Ohio App. 432). See annotations, 65 A. L. R. 2d 1408, 1413, Section 6; *Ib.*, 1418, Section 12; 49 A. L. R. 174, 177-178; 127 A. L. R. 602, 604; and 169 A. L. R.. 207, 208. See, also, *Ohio National Bank of Columbus, Trustee,* v. *Boone* (1942), 139 Ohio St. 361, 40 N. E. 2d 149. But see Bogert, Trusts and Trustees (2 Ed.), 207 and 208, Section 182.

While these rules of construction would yield the result Mary H. Casey seeks, "practically every rule of construction applied in the determination of the question of whether a vested or contingent remainder is created is subject to the qualification 'unless the intent of the testator * * * appears to the contrary.' " 33 American Jurisprudence 557, Life Estates, Remainders and Reversions, Section 100. Compare *Barr* v. *Denney,* 79 Ohio St. 358, 87 N. E. 267, with *Ohio National Bank of Columbus, Trustee,* v. *Boone, supra* (139 Ohio St. 361). See *Vitous* v. *Vitous* (1967), 9 Ohio App. 2d 302, 224 N. E. 2d 371;

3 Restatement of the Law, Property, Section 308, comment *g.*, and Section 309, comment *f.* and illustration 6.

In spite of the rules of construction relied upon by Mary H. Casey, in a number of Ohio cases the determination of a person's heirs has been made at a time later than his death. See *Kohler* v. *Brindley, Exr.* (1961), 116 Ohio App. 241, 187 N. E. 2d 393, motion to certify overruled, November 15, 1961; *Welles* v. *Pape, supra* (63 Ohio App. 432) (dictum), motion to certify record as in conflict with *Imhoff, Exrx.,* v. *Imhoff,* 59 Ohio App. 394, 18 N. E. 2d 411, overruled; *Cleveland Trust Co., Trustee,* v. *Frost, supra* (166 Ohio St. 329) (then-living heirs of testatrix succeeded to trust property at termination preceding trust estate, trust having failed for indefiniteness); *Tiedtke* v. *Tiedtke, supra* (157 Ohio St. 554), approved and followed on more explicit language in the will under consideration in *Kraemer et al., Trustees,* v. *Hook, Trustee* (1958), 168 Ohio St. 221, 152 N. E. 2d 430; *Barr* v. *Denney, supra* (79 Ohio St. 358). See, also, 20 Ohio Jurisprudence 2d 397, Estates, Section 149, n. 1; 56 Ohio Jurisprudence 2d 188, Wills, Section 660, n. 19.

In the instant cause, the testator's intention that his property is to be distributed under his will only to those in his bloodline is sufficiently strong to require its being given effect in spite of the preceding usual rules of construction. The testator having expressly provided for the distribution of the corpus of the trust to the heirs of his children who are of his blood, it would be incongruous to allow rules of construction, which are supposed to aid in the determination of testator's intention, tc cause the devolution of testator's property contrary to such express intention.

In both the *Cleveland Trust Co. case, supra* (166 Ohio St. 329), at page 333, and *Kohler* v. *Brindley, Exr., supra* (116 Ohio App. 241), at page 244, the court noted the factor of a plan to keep property in the family, in holding that interests in heirs of the testator did not vest until the death of the life tenant. See, also, *Tiedtke, Exr.,* v. *Tiedtke, supra* (157 Ohio St. 554), at page 561; *Warner* v. *Commissioner of Internal Revenue* (C. C. A. 2, 1934), 72 F. 2d 225, certiorari denied, 293 U. S. 620, indicating at page 228 that the factor of blood relationship was also a factor in *Barr* v. *Denney, supra* (79 Ohio St. 358).

Although the instant cause involves the determination of heirs of testator's children rather than heirs of testator, that distinction does not destroy the analogy to the cited cases. Only a construction that interests in corpus do not vest until the death of the last life tenant will serve to effectuate testator's intention that the corpus be distributed only to those of his blood upon the death of the last life tenant herein. The construction urged by the plaintiffs assures only that corpus interests are distributed ultimately to the heirs of the survivor of testator's children who are of testator's blood but, by allowing vesting prior to distribution, does not assure that the distribution of corpus is exclusively to testator's other children's heirs who are of testator's blood.

Plaintiff, Mary H. Casey, argues that *Ohio National Bank v. Boone, supra,* is indistinguishable from the instant cause. The *Boone case* resulted in the application of the rules of construction relied upon by Mary H. Casey herein. However, the only evidence of contrary intention was language of "divide-and-pay-over" in the will involved, similar to the language of testator's will herein. No such general plan as appears in this cause was evident in the *Boone case,* and the divide-and-pay-over language was insufficient to cause a departure from the general rules. The court noted, however, at page 365, that the rules of construction it relied upon were not to be followed where a contrary intent appeared. In the instant cause, this court has found a contrary intent. It is further noted that in the *Boone case* the early vesting result favored heirs of the whole blood of the testator over heirs of the half blood.

No evidence can be found in the testator's will of any intention to treat his children's families differently on the fortuitous basis that one of his children outlive the others. The remainders in the corpus are created by the same language and are to take effect in possession at the same future time. Therefore, it is logical, and this court holds, that they should vest in the heirs of testator's children, determined at the same future time, which under testator's will is the date of the death of testator's last surviving child. Alternatively stated, the heirs of the other children of the testator are to be determined as if such children die on the same date as does Elizabeth Deibel. Under either form of statement, John P. Gallagher having pre-

deceased Elizabeth Deibel (the last surviving child of testator), he never became an heir of Patrick Gallagher within the meaning of John Gallagher's will, and Mary H. Casey and those claiming through her not being heirs of Patrick Gallagher of testator's blood in their own right, they may claim no interest in the corpus of the trust upon Elizabeth Deibel's death. Had, however, John P. Gallagher left issue surviving Elizabeth Deibel, such being heirs of Patrick Gallagher (Section 2105.06 [A]-[E], Revised Code), of testator's blood, they would be entitled to share in the distribution of the corpus in their own right.

The remaining question with regard to the corpus is the proportion in which the heirs of the testator's children should eventually take. The key words from Item Fourth, 3rd, of the testator's will are, "to the lawful heirs of my said children who are of my blood *an equal share thereof to the heirs of each of my children.*" (Emphasis added.) The Court of Appeals directed that "the distribution of the corpus should be per stirpes to the lawful heirs of the deceased children of settlor, John Gallagher, who are in his blood line."

This holding, on its face, does not determine the number of shares into which the trust corpus is to be divided, because it fails to specify a root or stirpes generation. Had the words, "per stirpes," been used in the will to describe a division between one person's heirs, without more specificity, the root generation would be the nearest generation of heirs at law having living members. *Kraemer et al., Exrs.,* v. *Hook, Trustee, supra* (168 Ohio St. 221). When used by a court to describe a division between the heirs of several persons, it is unclear whether the number of original shares for division is the number of persons whose heirs are to take, or the number of heirs at law of such persons of the nearest generation having living members. It is clear from the entire record, however, that the Court of Appeals meant the number of roots or stirpes in this case to be three, the number of children of the testator, and that each such third was then to be distributed among the heirs of each of testator's children of his blood, by division and subdivision according to the relative degrees of consanguinity of the heirs entitled to each such share.

If the Court of Appeals' holding is understood as above,

this court concurs in it. The language of the will on this point seems almost too plain to admit of doubt. The word, "each," as used in Item Fourth, 3rd, of the will, clearly modifies "children," and "*an* equal share" (one share) is to be given to the *heirs* (plural) of each child of testator. In order to reach an opposite conclusion the word, "each," must be disregarded completely or wrenched out of context to modify "heirs," which must itself be made singular. These words are too plain to admit of any construction other than that given them by the Court of Appeals, unless the rest of the will and the testator's circumstances would very strongly indicate that the testator did not mean what he said when he used the above language. No such strong indication of contrary intention exists here; rather, the rest of the will in this cause provides a per stirpes distribution of the income of the trust, and this, considering the testator's unambiguous language, tends to affirm the court's interpretation thereof, since a symetrical plan emerges. Those who take income take corpus in the same proportions. (Compare the result herein as to income.) See *Barker* v. *Barker* (1915), 92 Misc. 390, 156 N. Y. Supp. 194, affirmed, 172 App. Div. 244, 158 N. Y. Supp. 413. See 3 Restatement of the Law, Property, Section 301, comment *j*.

Thus, reliance upon rules of construction cannot aid plaintiffs in attempting to overcome the strong inference arising from testator's express language.

The final question for decision is the proper disposition of the trust income prior to the trust's termination.

The Court of Appeals held, in accordance with the contentions of Angus Gallagher, Patrick's living son, and the trustees herein, that the death of John P. Gallagher, Patrick's only other child, without issue, terminated his interest in the trust income, and Patrick's entire share was distributable to Angus until the termination of the trust. This is in accordance with the way income had been distributed by the trustees prior to suit. The pertinent language from Item Fourth, 3rd, of the testator's will is as follows:

"They [the trustees] shall divide * * * said net income from said residuary estate into three equal parts, paying one-third to my son, Patrick Gallagher, one-third to my daughter, Elizabeth

Deibel and one-third to my daughter, Mary E. Renner * * * during the remainder of their natural lives, and in case of the death of any of my said children leaving a child or children the issue of their bodies, then such child or children shall take the share of said income to which the parent of such child or children would have been entitled if living. In case of the death of any of my children leaving no such child or children, then it is my will, and I hereby direct my executors to pay the income which such child would have received, if living, to the other children or their issue, if dead, in equal shares, the issue of such deceased children taking the share which the parent would receive if living * * *.''

The problem here is that the testator made no provision at all for the death without issue, prior to the termination of the trust, of a grandchild who had survived his own parent as he did for the case of the death of one of his own children without issue (which contingency did not occur). The implication to be drawn from this omission is the question: Did the testator intend thereby to indicate that each of his grandchildren should take an indefeasible, descendable, devisable interest in income until the termination of the trust, or did he merely fail to foresee and, therefore, fail to provide specifically for this contingency? If the latter, can his intention as to what should happen in this situation be gathered nevertheless from the rest of the will?

A court will not ordinarily supply words the testator has omitted. *Smith* v. *Hunter, Trustee* (1912), 86 Ohio St. 106, 115 and 116, 99 N. E. 91 (refusing to supply words of limitation not used by testator). If it were thus assumed that the testator's failure to dispose of the income in the situation now under consideration was intentional, then John P. Gallagher's income share, not being *expressly* limited to his life, or otherwise *expressly* terminable, would continue until the termination of the trust and pass at his death to his estate for distribution to his devisees. As Mary H. Casey contends, the class gift to the children of Patrick Gallagher, conditioned only upon a child's survival of Patrick, would be vested indefeasibly at Patrick's death in his then living children, and membership in the class would not thereafter decrease. A member's interest would then pass to his estate, to which distribution would be made in his

stead. 3 Restatement of the Law, Property, Sections 279, 282, 250, 251 and 296; 2 Simes and Smith, The Law of Future Interests (2 Ed.), Sections 653 and 654 at 111-13; 56 Ohio Jurisprudence 2d 182 and 189, Wills, Sections 656 and 661; 96 Corpus Juris Secundum, Sections 732, 733, 941 to 944, 1203 and 1206 at page 1048; 2 Scott on Trusts (2 Ed.), 925, Section 127.4; *Wiley, Exr., v. Bricker* (1900), 21 C. C. 109, 11 C. D. 429.

The foregoing result rests upon a strict application of the rules of construction relating to a single phrase of testator's will, that which makes a class gift of income to the children of a child of testator upon the latter's death before the trust's termination. However, "in ascertaining the intention of the trustor the court is not limited to determining what is meant by any particular phrase but may also consider the necessary implication arising from the language of the instrument as a whole." *Brock* v. *Hall* (1949), 33 Cal. 2d 885, 890, 206 P. 2d 360. In the instant cause, examination of testator's whole will convinces us that his failure to provide a disposition of the income share of a deceased child of one of his own children must be regarded as inadvertent rather than intentional, and that a gift over to the surviving children of a child of testator should be implied herein, for the purpose of carrying out the general plan revealed by testator's whole will, although it is incompletely expressed. See 2 Simes and Smith, The Law of Future Interests (2d Ed.), 340, Section 844; 56 Ohio Jurisprudence 2d 70, Wills, Section 527; *Brock* v. *Hall, supra.*

This court and the Court of Appeals have found that the testator generally intended to pass his property by his will to his own descendants exclusively. The devisees of John P. Gallagher are not members of such class. In a number of cases, factually very similar to this cause, an intention so to confine testamentary benefits has been a significant factor in limiting income payable until a trust's termination to surviving beneficiaries or their issue where no such express limitation appeared in the will. See *In re Estate of Hartson* (1933), 218 Cal. 536, 24 P. 2d 171; *Carnegie Estate* (1959), 397 Pa. 308, 155 A. 2d 349, 352; *In re Estate of Clark* (1944), 64 Cal. App. 2d 636, 149 P. 2d 465; *Dyslin, Exrx.,* v. *Wolf, Trustee* (1950), 407 Ill. 532, 96 N. E. 2d 485; *Elliott, Trustee,* v. *Hinkle, Exr.* (Ohio Probate 1958), 155

N. E. 2d 736.   See, also, *Rowland's Estate* (1892), 151 Pa. 25, 24 A. 1091.

In the instant cause, the testator's language, so far as it specifically provided, clearly spelled out a stirpital distribution of income, the children, issue of a deceased child of testator, taking their parent's share. A logical extension of testator's specific provisions gives a further indication of testator's general plan.   As has been said in several Pennsylvania cases: "Where testator has provided a scheme of representation of deceased distributees by their living issue, or has otherwise indicated an intent that the distribution be stirpital, the interest of each member of the class becomes a 'life-estate with remainder over to living issue if any and in default of issue of such decedent then over to surviving distributees, per stirpes.' " *Wood's Estate* (1936), 321 Pa. 497, 501, 184 A. 13, quoting *Rowland's Estate, supra*, at pages 29-30, and *Nixon's Estate* (1932), 306 Pa. 261, 265, 159 A. 442. Compare language of wills construed in *Carnegie Estate, supra*, 155 A. 2d, at page 352; *In re Estate of Clark, supra* (64 Cal. App. 2d 636).

Nowhere in testator's will are wives or personal representatives of testator's own children dying without issue provided for; in fact, their taking is specifically provided against by the gift over to surviving children of their issue. It is difficult to see why the testator would be more concerned about providing for the wives or enriching the estates of his grandchildren who die without issue. Compare *Carnegie Estate, supra*, 155 A. 2d, at 354; *Rhode Island Hospital Trust Co., Trustee*, v. *Thomas*, 73 R. I. 277, 289, 54 A. 2d 432.

The natural and actual objects of testator's bounty were clearly his wife, his children and their issue; no one else is even mentioned in the will. As declared in *Anderson Estate* (1949), 165 Pa. Sup. 353, 357, 67 A. 2d 783:

" ' * * * These are the persons for whose benefit the property is set apart and the purpose of the testator is apparent to so control its destination as to result in their benefit and advantage exclusively.   The other view of the case diverts it to strangers and subjects it to possible liability for the debts of those who are alien to the testator's blood and strangers to his bounty. * * * ' "

A purpose so to appropriate benefits exclusively to classes consisting of "children" or "children" and "issue" was found significant in *Nixon's Estate, supra* (306 Pa. 261); *Rowland's Estate* (1891), 141 Pa. 553, 21 A. 735; *In Re Hick's Estate* (1956) 345 Mich. 448, 75 N. W. 2d 819; *Rhode Island Hospital Trust Co., Trustee,* v. *Thomas, supra* (73 R. I. 277); *Kramer* v. *Sangamon Loan Co.* (1920), 293 Ill. 553, 127 N. E. 877. In all the cited cases the survivors of the class actually designated to receive the income took in preference to personal representatives of deceased members of the class.

Furthermore, in the instant cause only living beneficiaries are to take income so far as testator specifically provided. His own children took only life estates, and his grandchildren had to survive their parent to be entitled to income. *Cf.* 3 Restatement of the Law, Property, Section 252, comments *a.* and *e.* It is difficult to see why the testator would have preferred that income should be payable to the estates of his grandchildren rather than those of his own children, or to the estate of a grandchild who survived his parent over that of one who did not.

In view of the foregoing reasons and authorities it is held that the distribution of income should be confined to those who continue to be members of the classes of the living children of testator, any deceased child's living children, and any of the latter's living issue, upon a grandchild's death before termination of the trust. Upon a grandchild's death without issue before termination of the trust, the other children of the same child of the testator are to take the deceased child's share equally. Thus Angus Gallagher became entitled to John P. Gallagher's share of income upon the latter's death without issue.

This court does not hold that the right of survivorship is incident to a class gift of trust income. To do so would be tantamount to re-establishing the joint tenancy with incidental survivorship, long nonexistent in Ohio, as in most states. *In re Estate of Hutchison* (1929), 120 Ohio St. 542, 166 N. E. 687; *Foraker, Exr.,* v. *Kocks, Admx.,* 41 Ohio App. 210, motion to certify overruled January 27, 1932, 180 N. E. 743; 14 Ohio Jurisprudence 2d 89, Cotenancy, Section 2. See 2 Scott on Trusts (2 Ed.), Section 143, n. 4. See Jessup-Redfield, Surrogates' Law and Practice, Sections 2168 and 2171.

However, survivorship may be expressly provided among common owners of property in Ohio. *Lewis* v. *Baldwin* (1842), 11 Ohio 352; *In Re Estate of Hutchison, supra;* 14 Ohio Jurisprudence 2d 89, Cotenancy, Section 2. And, where it clearly appears from the testator's general testamentary scheme that survivorship should exist among the children of one of his children, upon their respective deaths without issue, then such intent shall be given effect by the courts. Such a disposition is but an extension to succeeding generations of the plan the testator provided for his children and grandchildren. Survivorship upon the definite failure of issue of a deceased grandchild is but a necessary element of the intended general plan of distribution and arises from the definition of the particular class the testator intended as beneficiaries, not from any incident of class gifts of income generally.

Furthermore, all entitled to income take by purchase from testator, which disposes of Mary H. Casey's contention that the life estates created in successive issue amount to a fee tail in either personalty (citing *King* v. *Beck, Admr.,* 15 Ohio 559) or a tenement (citing Sections 2107.49 and 2131.04, Revised Code), for a fee tail is an estate of inheritance wherein the issue take by descent from preceding donees in tail, rather than by purchase. *Pollock* v. *Speidel,* 27 Ohio St. 86, 94; 20 Ohio Jurisprudence 2d 284, Estates, Section 49. The only limitation in Ohio on a testator's right to create successive life estates by will is the rule against perpetuities (Section 2131.08, Revised Code), which is not violated here because all income interests must vest within the life of the survivor of testator's children, a life in being at the testator's death, the effective date of his will.

Plaintiffs' citation of Section 2107.49, Revised Code (abolishing the Rule in Shelley's case in Ohio and vesting a remainder in the heirs of the body of the life tenant), is also inapposite because successive life estates are created in issue here; that statute refers to remainders in fee. Also, that statute, even if applicable, does not require that a particular construction of a devise be made; it operates after construction of a devise has been made and denies the application of the Rule in Shelley's case where it would have been applicable. But even if applicable to remainders to the issue of a life tenant (see 20 Ohio Jurisprudence 2d 280, 283, Estates, Sections 45 and 47, n. 8,

but see 1 Casner, American Law of Property 487 and 488, Section 4.43), the rule operated only where there was an estate of inheritance in remainder and gave such estate to the life estate holder, but it did not create an estate of inheritance where none existed. This rule thus was never applicable to remainders "for life." *Ib.* at 485.

The Court of Appeals' judgment as to income is affirmed, and, as to corpus, the judgment is affirmed in accordance with the per stirpes distribution directed as set out in this opinion.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.