HOWLAND, EXR., ET AL. *v.* STONE FOUNDATION ET AL.

[Cite as Howland v. Stone Foundation,
17 Ohio Misc. 179.]

(No. 714820—Decided January 30, 1969.)

Probate Court of Cuyahoga County.

*Messrs. Ford, Clarke, Howland, Whitney & Haase*, for plaintiff, John Howland, Executor u/w/o Marion H. Stone, deceased.

*Messrs. Henderson, Quail, Schneider & Smelts*, for defendant, The Stone Foundation.

*Mr. Paul W. Brown*, attorney general, and *Miss Janice E. Wolfe*, for defendant, state of Ohio.

*Messrs. Jones, Day, Cockley & Reavis*, for defendant grandchildren, Trustees of Trusts for Grandchildren and Unborn and Unknown Defendants.

ANDREWS, Chief Referee.   The surviving executor of the will of Mrs. Marion H. Stone brings this action for a declaratory judgment, asking for a construction of certain parts of the will, and for instructions relating to the distribution of the assets comprising a renounced legacy.   The facts are stipulated.

By Item IV of her will, Mrs. Stone directed her executors to divide her residuary estate into three parts in the percentages indicated.   Twelve per cent was to go to her son, Charles Lynn Stone, "as set forth more particularly in Item V hereof."   Twenty-two per cent was to go to The Stone Foundation, "as set forth more particularly in Item VI hereof."   Sixty-six per cent was to go in equal shares to three trusts previously created by Mrs. Stone for the benefit of her three grandchildren, "as set forth more particularly in Item VII hereof."

Item V recited the bequest of twelve per cent of the residuary estate to Charles Lynn Stone, Mrs. Stone's son, and thereafter contained the following sentence:

"In the event that he should predecease me, then the share that he would have taken hereunder shall be added to the bequests made herein for the benefit of my grandchildren under the provisions of Item VII hereof."

Mrs. Stone was a widow, and Charles, who survived her, was her only child.   Charles had three children, all of whom are now living, and they are beneficiaries, respectively, of the three trusts for Mrs. Stone's grandchildren, referred to in Items IV and VII.

The Stone Foundation is an Ohio charitable corporation, exempt from federal income, estate, and gift taxes, and from the Ohio inheritance tax.

Charles Lynn Stone filed a renunciation and disclaimer of the residuary bequest to him contained in Items IV and V, and has since died.

The issue is whether the renounced legacy is to be divided among the remaining four residuary legatees (the Foundation and each of the three trusts for the grandchildren) or is to be limited to the three trusts, excluding the

Foundation. The executor has taken the position that the four remaining residuary legatees are entitled to the renounced legacy (in equal shares), and he has already made partial distributions in conformity with this view.

Our starting point is *Commerce National Bank of Toledo* v. *Browning* (1952), 158 Ohio St. 54. I will quote the syllabus:

"Where a will contains general residuary provisions for disposition of any and all of the testator's property not disposed of by other provisions of the will, if a bequest or devise of a part of the residue lapses or is otherwise ineffective, that part of the residue, exececpt as provided by statute and *in the absence of provisions of the will or surrounding circumstances justifying the conclusion that the testator expressed a different intention,* will ordinarily pass under such residuary provisions of the will to any other parties entitled thereunder to portions of the residue, instead of passing as intestate property." (Emphasis added.)

Thus, in the instant case, unless we may justifiably conclude that the testator has expressed a different intention, we must hold that the renounced legacy goes to the four remaining residuary legatees, including The Stone Foundation.

The *Browning* opinion states that the distribution among the remaining beneficiaries is to be *pro rata.* In the present case, the division would be equal, as each of the four beneficiaries is entitled to the same percentage of the residuary estate.

Without doubt, the testatrix "expressed a different intention" in the event that her son, Charles, predeceased her. If this occurred, Charles's share in the residuary estate was to go to the grandchildren's trusts, to the exclusion of The Stone Foundation.

However, the testatrix made no express provision for the event which happened, *i. e.,* a renunciation by Charles of his share in the residuary estate. Nevertheless, counsel for the grandchildren contends that a gift by implication

arises under these circumstances, and that Mrs. Stone's will indicates clearly that if the residuary gift to her son became ineffective *for any reason* (such as by renunciation), his share should pass to the grandchildren's trusts exclusively, just as though he had predeceased his mother. Mrs. Stone's general plan and intention, says counsel, as expressed in her will, was to benefit the three "grandchildren" trusts if the residuary legacy to Charles was ineffective. There is no reason, adds counsel, why Mrs. Stone would wish the grandchildren's trusts to take exclusively if Charles predeceased her, but not to take exclusively if the gift failed for some other reason.

Opposing counsel contends that to assume an intention by the testatrix that the disposition in case of renunciation by the son should be the same as though he had predeceased the testatrix, is pure speculation as to what existed in her mind when she made her will.

Counsel for the grandchildren refers us to two recent Ohio decisions applying the doctrine of gift by implication. *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42; *Central National Bank* v. *McMunn* (Prob. Ct. 1967), 12 Ohio Misc. 1.

In paragraph 5 of the syllabus, in *Casey* v. *Gallagher*, the Supreme Court announces the principle of law involved:

"When a testator's will clearly reveals a general plan or intention as to the disposition of his property, and a situation arises that is not within the express language of the will, such general plan may be regarded as existing but incompletely expressed, and the failure to provide for the situation inadvertent rather than intentional, and a gift may be implied for the purpose of completing the general plan."

The pertinent part of the will related to the income from a testamentary trust. The income was divided into three equal parts, each payable to a named child of the testator for life. In case of the death of any of the children leaving a child or children the issue of their

bodies, such child or children were to take the deceased parent's share of the income. In case of the death of any of the testator's children leaving no child or children, the deceased child's share of the income was to go to the other children of the testator or their issue. One of the testator's children died, leaving two children, Angus and John. Many years later, John died without issue but testate. The beneficiaries of his will were not blood relatives of the testator. The testator had made no provision at all for the contingency which occurred, namely, the death without issue, prior to the termination of the trust, of a *grandchild* who had survived his own parent. In holding that Angus became entitled to John's share of the income upon John's death without issue, the court said:

"In the instant cause, examination of testator's whole will convinces us that his failure to provide a disposition of the income share of a deceased child of one of his own children must be regarded as inadvertent rather than intentional, and that a gift over to the surviving children of a child of testator should be implied herein, for the purpose of carrying out the general plan revealed by testator's whole will, although it is incompletely expressed." 11 Ohio St. 2d at 56.

In paragraph 6 of the syllabus, the court noted that the testator's "general plan was that property passing under his will remain in his bloodline. * * *"

In *Central National Bank* v. *McMunn, supra,* there was a complicated and ambiguous will in which no express provision was made for the exact event which occurred. In applying the doctrine of gift by implication, we said:

"It appears to me that the testator intended to make the same disposition of a granddaughter's share whether she was married but failed to exercise her power of appointment (thus being technically intestate as to her share) or unmarried and thus without the *power* to dispose of it. In either event, her share was undisposed of, and that, I believe, is the key to the testator's plan for its disposition.

"There is no reason to believe that the testator in-

tentionally omitted to make any provision at all in the contingency which arose but was content to let the law take its course. I think that any gap in this part of the will was inadvertent; that his intention was clear; and that the gap should be filled by applying the doctrine of gifts by implication." 12 Ohio Misc. 12.

It is important to note also that in the *McMunn case* we found other evidence in the will indicating that the testator did not want the result of the *Browning* rule to occur.

The difficult question is whether we should raise a gift by implication in the present case, in which the will is so very different from the instruments construed in *Gallagher* and *McMunn*.

In Item V of Mrs. Stone's will, there is a gift over upon the happening of only one event, and we are asked to find that the testatrix intended the same gift over upon the happening of an entirely different event, for which she made no provision.

Counsel for the grandchildren contends that Items VI and VII contain evidence of Mrs. Stone's intent that Charles's share should go only to the trusts for the grandchildren in the event of a renunciation by him; but a careful reading of these items fails, in my opinion, to disclose such an intent. Consequently, if there is to be a gift by implication, it must stem from Item V.

Professors Simes and Smith have pointed out the conflicting policies facing the court when one of the litigants claims that there is a gift by implication. On the one hand, the court wants to carry out the testator's intent; on the other hand, when the testator has made no express provision for the particular contingency, a court is reluctant to guess at his intention. The presence of facts leading to an inference that the omission was inadvertent appears to be an important factor in determining that there is a gift by implication. See Simes and Smith, Law of Future Interests (2d ed.), Section 841.

The study of a large number of cases leaves the reader

somewhat bewildered. Many of the decisions are irreconcilable, even those within the same jurisdiction. Besides, because of the infinite variations of wills and surrounding circumstances, exact precedents are hard to find.

Some courts have stressed the distinction between a lengthy, complex will, and a comparatively short, plain, unequivocal will, by implying a gift in the first type, but refusing to do so in the second, because of an unwillingness under such circumstances to conjecture about the testator's intention. Compare, for example, *Mercantile-Commerce Bank & Trust Co.* v. *Binowitz* (Mo. App. 1951), 238 S. W. 2d 893, with *Crowson* v. *Crowson* (1929), 323 Mo. 633, 19 S. W. 2d 634.

Although I had originally intended to present and discuss a number of cases, I have decided that nothing is to be gained by doing so, and that this opinion would be unduly lengthened thereby. Instead, I will quote, from a leading New York case, a passage which, I believe, gives us a sense of direction in trying to solve a very difficult problem.

"The authoritative cases here pertinent confirm the notion that a litigated will has no twin. They warrant, however, a further statement of principle. * * * If, however, the property or estate claimed to be bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest or devise by implication, in the contingency which did occur, *if a reading of the entire will makes manifest that such was the intention of the testator.*" (Emphasis added.) *In re Selner's Estate,* 26 N. Y. S. 2d 783, 786 (App. Div. 1941), aff'd, 287 N. Y. 664, 39 N. E. 2d 287 (1941) (no opinion).

There is certainly nothing in Mrs. Stone's will which "makes manifest" an intention to distribute the renounced legacy to the three grandchildren's trusts exclusively, or which shows a "general plan" to that effect. Nor is there any justification in this comparatively short, unequivocal

will for "guessing" that the omission was inadvertent. In these respects the case differs markedly from the *Gallagher* and *McMunn cases, supra.*

Were we to hold that there is a gift by implication in this case, we would be saying, in effect, that when a testator provides for a gift over in case of the prior death of a legatee, he is automatically providing for the same gift over in case of a renunciation by the legatee, in the absence of an indication to the contrary. I am unwilling to subscribe to such an extension of the doctrine, and I hold that there is no gift by implication in the case before us.

### CONCLUSION OF LAW

The assets comprising the residuary legacy renounced by Charles Lynn Stone are to be divided equally among the four remaining residuary legatees, namely, The Stone Foundation and each of the three trusts for the grandchildren. The partial distributions already made or set aside by the executor are hereby approved.